### 4361.　MAYNARD & CO. *et al. v.* MAYNARD.

In a suit of a married woman against a bank, on a certificate of deposit issued to her by the bank, the defense relied upon was that the bank had paid to her husband the money represented by the certificate, in obedience to her oral direction, and the trial judge was timely requested to instruct the jury as follows: "If you believe, from the evidence in this case, that the plaintiff, Mrs. Martha Maynard, authorized the defendant to pay the money represented by the certificate of deposit over to her husband, and the defendant did in good faith pay it over to him, then I charge you that in law that would be a good defense to a suit predicated upon this certificate of deposit in favor of the plaintiff, and she could not recover, provided she had authorized the defendant to let her husband have the money; and this would be true whether she let him have it as a loan, or whether as a gift." *Held,* that this was a correct statement of law applicable to the issues made by the pleadings and the evidence, and was not covered by the general charge; and the refusal to charge as requested was error.

DECIDED FEBRUARY 11, 1913.

Complaint; from city court of Forsyth—Judge Cabaniss. July 15, 1912.

Maynard & Company, private bankers, on January 11, 1906, issued to Mrs. Martha Maynard a certificate of deposit for $3,000,

bearing interest at the rate of 8 per cent. per annum if left with the bankers for one year or longer. The certificate was to be paid, both principal and interest, upon its return to the bankers, properly indorsed. On January 19, 1907, the certificate was credited with interest paid for one year, and on March 4, 1910, a credit of $1,000 was entered upon it. On the back of the certificate the name of Mrs. Martha Maynard was indorsed for the purpose of demanding payment. Mrs. Maynard, as the holder of the certificate, made a demand on the bank for payment of the balance due thereon, and payment was refused, and she thereupon brought suit against Maynard & Company, in the city court of Forsyth, and obtained a verdict for the amount of the certificate, less the credits appearing thereon. The defendants filed a motion for a new trial, based upon the usual general grounds and upon special assignments of error as to excerpts from the charge of the court, and the refusal to give certain written instructions. The writ of error brings up for review the judgment overruling the motion for a new trial.

The defendants admitted the execution of the certificate of deposit, and that the plaintiff was the legal holder thereof. They relied upon two defenses, the first of which was that the amount of the certificate had been paid by them to the husband of the plaintiff on her oral direction to make such payment. Elaborating this defense, they claimed that in July, 1907, negotiations began between the plaintiff's husband and Mrs. Reed, looking to the purchase of a stock of goods owned by her, consisting of groceries; that the first information the defendants had of this matter was when Mrs. Reed spoke to one of the members of the firm, telling· him of the pending trade and informing him that the plaintiff's certificate of deposit, issued by the defendants, would be used in purchasing the stock of goods, should the terms of the trade be finally agreed on; that subsequently both the plaintiff and her husband informed the defendants of the purchase of the stock of goods, and the plaintiff, in the conversation then had, authorized the bankers to pay to her husband the $3,000 on deposit, represented by the certificate, to be used by them in payment for the stock of goods purchased from Mrs. Reed; that in pursuance of this arrangement, the plaintiff's husband checked out $1,000 of the money represented by the certificate, to replenish his stock of goods, and that Mrs.

Reed, in payment for the stock of goods she had sold to him, drew out of the bank, in person and by check, something over $1,900, as a part of the sum represented by the certificate, and in this way all of the $3,000 represented by the certificate of deposit was paid out. The defendants aver that from this time in 1907, until early in 1910, the plaintiff made no claim on the certificate of deposit and made no demand for the payment of any interest thereon. The second defense relied upon (although there was no formal plea to that effect) was that the plaintiff subsequently fully ratified the payment by the defendants of the amount of her deposit.

The evidence as to the controlling issue in the case, to wit, as to the authority to pay out the money as represented by the certificate of deposit, was in direct and sharp conflict, the plaintiff and her husband both testifying unequivocally that no such authority had been given. She not only denied that she had given the defendants any direction to pay out her money in the manner claimed, but testified that she was keeping her money in bank for the purpose of building a little home for herself; that she never authorized the bank or her husband to use any part of it in the purchase of the Reed stock of goods; that she did not know of any arrangement which her husband had made with the defendants or with Mrs. Reed for the purchase of the goods; that the only amount she ever received on the deposit was the interest credited on the back of the certificate and the $1,000 paid directly to her, and that she had no knowledge that the balance represented by the certificate was used by her husband in payment for the stock of goods bought by him from Mrs. Reed. The defendants, by positive evidence and by corroborating circumstances, supported all the material allegations of their plea. They proved also that they were not interested in any manner in the transaction relating to the purchase of the stock of goods from Mrs. Reed, and received no benefit from the payment of the plaintiff's money to Mrs. Reed and the plaintiff's husband.

*R. L. Maynard, Willingham & Willingham,* for plaintiffs in error.
*Persons & Persons,* contra.

HILL, C. J. (After stating the foregoing facts.) The verdict, being supported by the evidence in behalf of the plaintiff, can not be disturbed by this court; and unless some material and prejudicial error of law was committed in the trial, which misled or confused the jury in arriving at their verdict, a new trial should

not be granted. The instructions to the jury, and the defendants' written requests for instructions which were refused, relate to two questions covered by various grounds of the motion for a new trial; and these will be considered in their order.

It is conceded that the certificate of deposit was duly issued to the plaintiff; that this certificate was not taken up by the defendants, and that the money represented thereby was paid out by them upon the oral direction and request of the plaintiff as the holder of the certificate; so the main question in the case is this: Could the bankers lawfully pay to the husband the wife's money, deposited with them and represented by the certificate, upon the oral instructions, to be used by him in paying his debts, the bank not being interested in the use of the money and receiving no benefit therefrom? We think the law applicable to this question has never been better stated than by Judge Powell in the case of *Third National Bank* v. *Poe,* 5 *Ga. App.* 113 (62 S. E. 826), to the effect that a married woman has power to contract as to her separate estate, subject only to the statutory limitations that she can not make a contract of suretyship, can not assume to, or pay to, a creditor of the husband a debt of the latter, and can not sell her separate estate to her husband without the consent of the superior court. "In the absence of fraud or undue influence, she may give her property or money to her husband, in order that he may pay his debts;" and "in the absence of fraud or collusion, she may borrow money or sell property (the husband's creditor not being the lender or purchaser, as the case may be) to get money to furnish to her husband, in order that he may pay his debts, notwithstanding the lender or purchaser knows the purpose." This statement of the rule of law applicable to the rights of the wife as to her separate estate is abundantly shown to be correct by the many decisions of the Supreme Court cited by Judge Powell in the *Poe* case, supra. While it would be unusual and a dangerous practice for a bank to pay out a depositor's money under a verbal direction of the depositor, the money paid out being represented by the bank's certificate of deposit, which expressly provides that it shall not be paid except on the return of the certificate, properly indorsed, yet if in fact that direction is given, and the bank in good faith pays out the money according to the direction, without any interest in the payment, and receives no benefit therefrom, the

bank will not be compelled subsequently to pay to the depositor, as the holder of the certificate, the sum represented thereby, and which it previously paid out according to the direction of the holder thereof. In other words, if the defendants in this case, as private bankers, paid out the money to Mrs. Reed for the purchase of a stock of goods, under the positive oral direction of the plaintiff to do so, or paid it to her husband in order that he might buy this stock of goods from Mrs. Reed, in the absence of any fraud on the part of Mrs. Reed in procuring the purchase of the goods, or of any benefit accruing to the bank by reason of the transaction, and in the absence of any fraud therein, it being simply a voluntary gift by the wife of her money to the husband, in order that he might buy this stock of goods, the payment would have been valid, and the plaintiff would not subsequently have the right to recover as the holder of the certificate of deposit. The rule of law comprehensively announced by Judge Powell in the *Poe* case; supra, was applicable to the facts of the present case; at least it was applicable to the contentions of the defendants; and the trial judge was requested by the defendants to give in charge written instructions embodying the law as thus announced and as well settled by repeated rulings of the Supreme Court. See *Johnson* v. *Leffler,* 122 *Ga.* 670 (50 S. E. 488) ; *McCrory* v. *Grandy,* 92 *Ga.* 327 (18 S. E. 65) ; *Nelms* v. *Keller,* 103 *Ga.* 745 (30 S. E. 572) ; *Gross* v. *Whitely,* 128 *Ga.* 79 (37 S. E. 109) ; *Hill* v. *Cooley,* 112 *Ga.* 115 (37 S. E. 109).

The plaintiffs in error contended before the trial court, and contend here, that if the wife can legally borrow money for the purpose of paying the debts of her husband, and bind her separate estate therefor, it follows that she can draw out funds for the purpose of paying for a stock of goods purchased by him; that there is no difference in principle between the paying out of money by a bank on the order of a depositor to a creditor and the drawing by him of a check on the bank in favor of such creditor for such fund; that the bank's relation to a depositor is simply that of a debtor to a creditor, and the bank holds the deposit subject to the creditor's order (*Ricks* v. *Broyles,* 78 *Ga.* 610, 3 S. E. 772, 6 Am. St. Rep. 280; *Davenport* v. *State Banking Co.,* 126 *Ga.* 136, 54 S. E. 977, 8 L. R. A. (N. S.) 944, 115 Am. St. Rep. 68, 7 Ann. Cas. 1000) ; and it is insisted that the bank was under a duty to

pay out the money according to the order or demand of the depositor, and was compelled to do so, without reference to whom it was paid, and was under no obligation to question the right of the depositor to direct payment of the amount of the deposit to whom she pleased; and that, in the absence of actual fraud in the payment, or some interest by the bank in the payment, the bank could not be held liable for simply following the directions of its depositors; and it is earnestly insisted that the bank, receiving not one cent of benefit from the transaction, having no knowledge of any fraudulent scheme between the husband and wife, and simply paying out the money as directed by her, was relieved of any liability in the matter, and that if anybody was liable for any misappropriation of funds of the wife, it was Mrs. Reed, who was in a sense a creditor of the husband.

. The learned trial judge did not give the instructions requested by the defendants, nor were they in effect covered by any of the instructions contained in the general charge, but, on the contrary, the court invoked, as against the bank, the rule of law which was only applicable, if applicable at all, if the suit had been against Mrs. Reed, who had received the money as a creditor of the husband. On this subject the court charged as follows: "I charge you, gentlemen, that the sale of the stock of goods to the husband, under the contract of purchase, was the creation of a debt against him, and that the party selling could not knowingly take the money belonging to the buyer's wife in payment of the same; and if he did, the wife, even though consenting, could recover back her money as paid for the same against the seller." This charge was objected to on the ground that it was not applicable to the facts of the case, since the defendants were in no sense interested in the sale of the stock of goods to the husband, but simply held as bailees the plaintiff's money, subject to order, and by the terms of the bailment were compelled to pay out the money upon her order; that its effect was to mislead the jury, in that it tended to convey to them the idea that the defendants were the vendors of the stock of goods, and practically instructed them that the payment by them of the plaintiff's money to Mrs. Reed was void and could be set aside by her, even though she had previously authorized the bank to pay it; without clearly distinguishing the difference between the vendor, Mrs. Reed, and the defendant bankers. It was further contended

that this instruction did not embody a correct principle of law, for the plaintiff had the right either to lend or to give the money to her husband with which to buy the goods, provided she acted on her own responsibility, and without any inducement or scheme suggested or practiced by the vendor, looking to the accomplishment of the same, that she could not recover her money paid to the vendor, even though he knew that it was her money, if such were the case, and the vendor practiced no fraud to induce her to make the payment. The court further charged to the effect that if the defendants had the authority of the plaintiff to transfer her deposit, or a part thereof, to the account of her husband, knowing that it was done for the purpose of paying an indebtedness due or to become due by her husband, the transfer (if there was any) was not valid and legal, and the defendant bank should not be given credit for the same, as in law a wife can not bind her separate estate by an agreement of suretyship, or by an assumption of the debts of her husband, or sell her property in extinguishment of his indebtedness; that if the agreement or transfer was made for either of these purposes, the agreement was illegal and void, especially if the defendant P. B. Maynard, cashier or agent, was a party to an agreement by which plaintiff agreed to pay her husband's debts, then due, or to become due by the purchase of a stock of goods from Mrs. Reed. These excerpts were objected to, and, we think, properly so. They do not aptly apply to the facts of the case, nor do they state the law on the subject as declared by this court in the *Poe* case, supra, and by the Supreme Court in repeated rulings on the same subject. We think that if the plaintiff directed the defendant to pay over to her husband funds which the bank had on deposit for her, and the money was paid out under such authority, such payment would be a discharge of the defendants, even though the bank knew at the time that her husband would use such money in the purchase of a stock of goods for himself; and we think that the jury should have been instructed in the language of the request: "If you believe, from the evidence in this case, that the plaintiff, Mrs. Martha Maynard, authorized the defendant to pay the money represented by the certificate of deposit over to her husband, and the defendant did in good faith pay it over to him, then I charge you that in law that would be a good defense to a suit predicated upon this certificate of deposit

in favor of the plaintiff, and she could not recover, provided she had authorized the defendant to let her husband have the money; and this would be true whether she let him have it as a loan, or whether as a gift."

For the reason that, in our opinion, the law which should have guided the jury and which would have authorized a verdict for the defendants, if they believed the evidence in behalf of the defendants, was not aptly and correctly stated in the charge, but was aptly stated in the refused requests, we are constrained to grant another trial. We do not pass upon the question of ratification, for, though there was evidence that the plaintiff had in fact ratified the payment of her money to her husband for the purpose of purchasing this stock of goods from Mrs. Reed, no plea of this character was filed. The whole defense was based upon the contention that the payment by the bank of the plaintiff's money was fully authorized by her, and was, under the law of this State, valid and binding upon her.                    *Judgment reversed.*