### ARMSTRONG *et al. v.* WALTON, ordinary, for use, etc.

1. As a general rule, the duration of liability under corporate indemnity bonds on the part of the insurer to the insured is coextensive with that of the "risk" of the insured, in the absence of specific provisions limiting the insurer's liability. The liability, of course, cannot be made to extend to any acts prior to *its* execution, in the absence of specific covenant to that effect. The bond under consideration herein contained no specific limitations.
2. Where the court has passed an order authorizing its receiver to reduce the bond previously given by him to a smaller amount as of a given date, providing that the bond when so reduced shall be deposited by

the receiver or his surety with the clerk of the superior court, and order-ing the receiver to pay the premium due for such new bond, and no new bond is in fact given, such order will not have the effect of modify-ing the original bond in any particular.

3. The fact that the receiver had in his hands, on the date provided in the order for the reduced bond to take effect, more money than the amount for which judgment is asked would not prevent a recovery by the plaintiff of the full amount of the loss under the original bond.

4. "Where money is in the hands of a receiver for preservation to await final disposition by order or decree, and the same is deposited in a bank selected by himself, the receiver is personally liable therefor in the event of the failure of the bank."

5. Where the court orders its receiver to pay to the attorneys of record certain dividends due to creditors of an insolvent debtor, and the attor-neys and the receiver agree that the receiver may mail checks directly to the clients of such attorneys, and the receiver fails to remit to a portion of them, such agreement will not relieve the surety of the receiver from liability for the amounts the receiver so fails to remit, although these amounts be lost with other funds placed by the receiver in a bank of his own selection, which fails.

6. Where a receiver was required, by the terms of the order of appoint-ment, to hold the funds coming into his hands as receiver subject to the order of the court, and, without any order for so doing, he deposited the funds in a bank of which he was cashier, which afterward failed, and thereby, as he averred, the funds were lost, his omission to pay out funds under an order of court declaring a dividend, and failure on his part to make "substantial" compliance with the provisions of the Civil Code, § 2351, relative to the making of annual returns, would result in a forfeiture of his commissions as receiver.

No. 530. APRIL 11, 1918.

Questions certified by Court of Appeals (Case No. 8299).

*William H. Fleming,* for plaintiffs in error.

*Callaway & Howard,* contra.

GILBERT, J. The Court of Appeals certified the following ques-tions requesting instruction from the Supreme Court, the answers to which are seriated.

1. "1st. A receiver for a bank was appointed by a judge of the superior court, and gave bond which was approved on August 7, 1912, and which is as follows:

'Know all men by these presents, that the undersigned, James P. Armstrong as principal, and United States Fidelity & Guaranty Co. as surety, acknowledge ourselves held and firmly bound unto A. R. Walton, Ordinary of said County, and his successors in office, in the full sum of fifty thousand ($50,000) dollars, for the true payment of which we bind ourselves, our executors, administrators, and successors firmly by these presents. The condition of the

above-stated obligation is such that whereas the above-bound James P. Armstrong was, on the 6th day of August, 1912, appointed, by the judge of the superior court of said county, receiver·of all the assets of the Citizens Trust Company, a corporation under the laws of Georgia, doing a banking business in the City of Augusta, Richmond County, Georgia, said appointment having been made in cases brought by the State of Georgia and others against the Citizens Trust Company et al., in the superior court of Richmond County: Now, therefore, should the said J. P. Armstrong faithfully perform all of his duties as receiver as aforesaid, and make a faithful accounting of all monies and assets of said Citizens Trust Company which may come into his hands as such receiver, then the obligation of this bond to become null and void; else to remain of full force and effect. In witness whereof said parties have caused these presents to be properly signed, sealed, and delivered.' How long does this bond remain in force, the annual premium being $250.00 and this amount having been paid?"

Under the terms of this bond the obligors are bound until final accounting and discharge of the receiver by the court. The fact that the premiums were paid annually and only the first premium had been paid cannot alter the terms of·the bond in so far as it concerns the obligation of the surety to the obligee in the bond. Upon failure to receive subsequent premiums the bonding company is bound to resort to its legal remedies to collect the same, or to seek an accounting and discharge from the obligation of the bond after notice to all parties at interest. Frost on Guaranty Ins. §§ 253 et seq. The terms of the bond specify that it was conditioned on the fact that J. P. Armstrong should "faithfully perform all of his duties as receiver as aforesaid, and make a faithful accounting of all monies and assets of said Citizens Trust Company which may come into his hands as such receiver." There is no other limitation stated in the bond. These bonds are sometimes called judicial bonds, sometimes fidelity bonds, and sometimes guaranty insurance. By whatever name the contract may be called, they are in the nature of indemnifying bonds, and are analogous to insurance policies. American Surety Co. v. Paully, 170 U. S. 133, 144, 160 (18 Sup. 552, 42 L. ed. 977). They stand upon a somewhat different plane from that of volunteer sureties, who receive no compensation as such. Topeka v. Surety Co., 213 Fed.

962. As to the latter the rule is strictissimi juris. *Terrell* v. *McLean,* 130 *Ga.* 633-635 (61 S. E. 485). While such corporate surety bonds should·be fairly construed according to the reasonable rules for the interpretation of contracts, yet when the language is susceptible of two constructions equally reasonable, the one most favorable to the insured should be accepted. American Surety Co. *v.* Paully, supra. Parties to such bonds should specify the exact nature and extent of their obligation; and when they have done this, the contract will not be so extended by the courts as to make it mean something else. Frost on Guaranty Insurance, § 249. As a general rule, the duration of liability under such bonds on the part of the insurer to the insured is coextensive with that of the "risk" of the insured, in the absence of specific provisions limiting the insurer's liability. The liability, of course, cannot be made to extend to any acts prior to its execution, in the absence of specific covenant to that· effect. Frost on Guaranty Insurance, §§ 250 ct seq., and authorities cited. See also Childs on Suretyship and Guaranty, § 70; Walker on Fidelity Bonds, 3; Brandt on Sur. & Guar. §§ 1, 2, 5.

2. "2d. On November 13, 1913, the presiding judge passed the following order: 'The foregoing petition read and considered. James P. Armstrong, as receiver of the above-entitled causes, is hereby authorized to reduce the bond heretofore given by him as receiver to the sum of $10,000.00 as of date August 7, 1913, said bond for the said sum of $10,000.00 to be conditioned in all respects as was the original bond for $50,000.00 given by the said receiver. Ordered further, that the said bond so reduced or made shall cover the period of one year from August 7, 1913, and shall be deposited by the said receiver as [or?] his surety with the clerk of the superior court. Ordered further that said receiver is hereby authorized to pay the premium of $50.00 due for such bond. In open court this 13th day of November, 1913.' No new bond was given.

"(*a*) What effect did the above order have on the original bond?"

No new bond having been given, neither the principal nor the surety acted upon the authority contained in the order of the court; and it follows that the order of the court did not have the effect of modifying the original bond in any particular.

"(*b*) Was the reduction of the bond legal when made on the application of the receiver without notice to any one?"

"(c) If the order signed on November 13th, reducing the bond, was legal, was the reduced bond effective from August 7th, or from the date of the order, or from the date on which it was deposited with the clerk of the court as provided in the order?"

"(d) Was the $50,000 bond reduced to $10,000 by the order of the court and the payment of the $50 premium, without any action on the part of the company signing the bond?"

"(e) In any event would the reduced bond be effective until there was settlement or showing made by the receiver for funds coming into his hands during the period beginning August 7, 1912, and ending when the reduced bond became of force?"

"3d. If the reduction of the bond from $50,000 to $10,000 was proper and legal, was the surety on the $50,000 bond responsible for all funds which came into the hands of the receiver during the life of said bond, without regard to the date of the loss of the funds?"

"4th. Would the surety be responsible under the $50,000 bond for such sum as the receiver had in his possession on the 7th of August, 1913, 'although the failure to account, failure to respond, or loss of the money may not have occurred until long after that date'?"

"5th. If the bond was legally reduced to $10,000, and the record shows no actual defalcation on the part of the receiver, and the books of the bank in which the receiver deposited the funds in his hands as receiver, and which failed after November 13, 1913, showed a deposit in the name of the receiver for more than $10,000, could there be a recovery by plaintiff for any principal sum in excess of $10,000?"

The statement already made in response to subdivision (a) answers also subdivisions (b)-(e) of the second question, and the 3d, 4th, and 5th questions.

3. "6th. If the record shows that on August 7, 1913, there was in the hands of the receiver more money than the amount for which judgment is asked, would the plaintiff be entitled to recover the full amount of the loss under the $50,000 bond?" Yes.

4. "7th. Would the act of the receiver in depositing funds in his hands as such receiver in a bank of his own selection and without order of the court and during the life of the original bond be such a breach of the said bond as would authorize a verdict against

his surety, where the bank in which the funds were deposited, and of which the receiver was cashier, failed after November 13, 1913, the date of the order reducing the bond, and loss of the funds then in the hands of the receiver resulted?" This must be answered in the affirmative. As was said in *Lamb* v. *Dart,* 108 *Ga.* 602, 610 (34 S. E. 160), in regard to a county treasurer who had deposited public money in a bank of his own selection: "Neither the bond nor the law contains any provision relieving the treasurer from liability for such balance should the same become lost without fault or negligence upon his part. With the safe custody of the public money that went into his hands he, and he alone, was intrusted. There is no authority whatever for his making any other person or corporation the custodian of the fund. . . The bank was even under no obligation to keep that fund separate and to itself as specific property belonging to the county, or to its treasurer. It could appropriate it to the payment of checks drawn upon the bank, and could otherwise use it in the course of its legitimate business. Such general deposits in bank really create the relation of debtor and creditor between the bank and the depositor. It therefore simply amounts to a loan to the bank. With the same reason might it be contended by a public official that he is relieved from liability for public funds in his hands because he loaned it to an individual in the utmost good faith and with the honest belief that the borrower was perfectly solvent. Public policy will not tolerate such a defense by a public official." The same principles apply to a receiver appointed by court. Civil Code, § 5484; *Ricks* v. *Broyles,* 78 *Ga.* 610 (3 S. E. 772). See also *Phillips* v. *Lamar,* 27 *Ga.* 228 (73 Am. D. 731).

5. "8th. Where a dividend to the depositors is declared, which by order of the court is to be paid by the receiver to the attorneys of record, and by an agreement between one of said attorneys and the receiver the latter is to mail checks direct to the clients of the attorney, and fails to remit to a portion of them, does the agreement between the attorney and the reeciver relieve the bondsman of liability for the amount the receiver failed to remit to the clients of the attorney, and which amount the receiver claims was lost with the other funds when the bank failed?" Such an agreement between the attorney and receiver does not relieve the bondsman of liability for the amount the receiver failed to remit to the clients of the attorney.

6. "9th. Where the order appointing a receiver required him to hold the funds subject to the order of the court, and, without any order for so doing, he deposited the funds in a bank of which he was cashier and which finally failed, and the receiver claimed that the funds in his hands at the time were lost by the failure of the bank, and where the receiver failed to pay out funds under the order of the court when a dividend was declared, and 'failed to comply with the requirements of the law as to making annual returns under oath to the judge of the superior court, accompanied by vouchers, at the first term of court held the first year of his appointment,' did he by this conduct forfeit his commissions as receiver?" This question is answered in the affirmative. Civil Code, §§ 2351, 2352. It will be noted that the latter section provides that "on failure to comply substantially" with any of the requirements of the code the receiver forfeits his compensation. The question propounded does not take into account whether there was a substantial compliance, and the reply to the question is based on the assumption that there was no "substantial compliance." It is insisted by counsel for the receiver that the sections of the code just cited are not applicable in the case, because the Citizens Trust Company is not a bank of the character included within the provisions of the Civil Code, § 2350. The reply which we have made to this question is based upon the terms of the bond, which states in terms that James P. Armstrong was, on a specified date, appointed receiver of the Citizens Trust Company, "a corporation under the laws of Georgia doing a banking business." The insurer is bound by the recitals in the bond. Frost on Guaranty Insurance, § 250.

<em>All the Justices concur, except Fish, C. J., absent.</em>