36883. POWELL *v.* BARKER *et al.*

Decided October 16, 1957—Rehearing denied October 31, 1957.

*John S. Wood, J. R. Cullens*, for plaintiff in error.

*Fullbright & Duffey, Henry J. Fullbright, Jr.*, contra.

TOWNSEND, J. ■ Contribution between joint tortfeasors was not allowed at common law on the theory that the law would not aid those who were in pari delicto. Our Code, § 105-2012, provides: "If judgment is entered jointly against several trespassers, and is paid off by one, the others shall be liable to him for contribution." Under this Code section, which gives a new statutory right, it would appear that a defendant is entitled to contribution from his codefendants when these two elements exist—that is, that the judgment has been entered against both

and that it has actually been paid by one in an amount exceeding his pro rata share. In this view, an actual assignment of a judgment, or having execution issued and payment entered thereon under Code § 39-608 (which is but a cumulative remedy for enforcing contribution, see *City of Rome* v. *Southern Ry Co.*, 50 *Ga. App.* 185, 177 S. E. 520; s. c., 179 *Ga.* 449, 176 S. E. 7) are not essential elements of the cause of action. Nevertheless, the demurrer should have been sustained for two reasons, neither of which affects the merits of the defendants' right to contribution. The original cause of action sounded in tort. The right of contribution accruing upon payment by a joint tortfeasor of more than his pro rata share of the judgment is not an ex delicto right, but an equitable one which courts of law have recognized and applied on the theory that there is an implied contract on the part of one judgment debtor to contribute to another who has paid more than his share of the obligation. See 13 Am. Jur. 8, Contribution, § 5; *Horton* v. *Continental Cas. Co.*, 72 *Ga. App.* 594, 597 (34 S. E. 2d 605). If the cross-action be regarded as a suit on a judgment, it is likewise not sustainable, for regardless of whether the cause of action sounded originally in tort or contract, it merged in the judgment to become a debt of record, and an action thereon is an action of debt. *Underwood* v. *Underwood*, 139 *Ga. App.* 241 (77 S. E. 46).

Secondly, the amendment does not meet the requirement of a setoff of mutual demands for the reason that the plaintiff's right of action for contribution accrued only upon payment of the judgment, which date was subsequent to the filing of this suit. In *Huey* v. *Stewart*, 69 *Ga.* 768 (3) it was held: "A mere recovery against complainant being alleged in the original bill, with no allegation of payment, he would not, on that ground, have the right to contribution from the representative of his coadministrator. Payments made after this case was begun would avail nothing." Code § 20-1302 relative to setoff provides that the mutual demands must exist at the time of the commencement of the suit. See also *Fuller* v. *Coker*, 24 *Ga. App.* 418 (2a) (101 S. E. 1). No equitable jurisdiction was invoked to show a reason for noncompliance with either of these rules, and the question of whether in equity such a proceeding might have been allowable is not before this court. The trial court erred in overruling

the demurrer to the amendment and in directing a verdict for the defendants on the cross-action. *Fuller* v. *Coker,* (1) supra.

■ Code § 38-202 provides: "The general character of the parties, and especially their conduct in other transactions, are irrelevant matter, unless the nature of the action involves such character and renders necessary or proper the investigation of such conduct." Special ground 5 of the amended motion for new trial assigns error on the exclusion by the court of testimony on cross-examination of a witness for the defendants, a resident engineer of the Georgia State Highway Department under whose supervision the construction of the Cartersville by-pass was proceeding, to the effect that it is in the specifications of their contracts that a pneumatic roller be used to pack the road during certain periods of construction; that at this time compaction by rubber-tired traction is helpful. One of the main issues in the case was whether the defendants were as a matter of fact attempting to keep traffic off the by-pass or whether they were allowing or even encouraging its presence. The testimony excluded was relevant as showing a reason why the contractors, as contended by the plaintiff, made no effort to warn traffic to stay off the project because they benefited from the presence of vehicles going over, and thus tending to impact, the surface of the road.

■■ The plaintiff alleged in his petition that the collision occurred on U. S. Highway 41 and "that said highway at the point of said collision was not paved at said time but that the public in general were using said highway at said time" and also that "said highway at the time and place complained of was a public highway in that the general public was using said highway." Negligence is alleged in driving at a rate of speed greater than was reasonable and prudent under the conditions existing on the highway, in driving in a southerly direction along a northbound traffic lane, in failing to reduce speed while rounding a curve; in failing to reduce speed upon approaching a place on the highway when the way ahead was not free and clear from oncoming traffic and visibility was obscured, and in driving into the plaintiff's vehicle when the latter was in its proper lane of traffic for vehicles traveling in a northerly direction. Accordingly, the case must stand, if at all, on the proposition that the road

in question was at the time a public highway. Code § 68-1504 (1) (a) defines a highway as follows: "The entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." In *Southern Ry. Co.* v. *Combs*, 124 *Ga.* 1004, 1006 (53 S. E. 508), it was stated: "The term 'highway' in its popular sense, is a road or way open to the use of the public; a main road or thoroughfare. Webster's Int. Dict. A way open to all the people is a highway. Though every public thoroughfare is a highway, it is not essential that every highway should be a thoroughfare. Elliott on Roads and Streets (2nd ed.) § 1 et seq. A road which leads only to the residence of a single individual may be a highway. Every thoroughfare which is used by the public, and, in the language of the English books, is common to all the king's subjects, is a highway. 15 Am. & Eng. Enc. Law (2d ed.), 350. Highways are created by legislative authority, by dedication, or by prescription. The construction of the term 'highway' when used in a statute, depends upon the legislative intent, and no fixed rule in regard to its meaning can be given."

It is undisputed that the road in question was intended to form an improved link in the existing highway system; that at the time in question the work of preparing it for this purpose was in progress; that it was intended to be, but had not yet been, paved; that it was accordingly under the supervision and control of the contractors who were working on it; that it was the duty of such contractors, if they wished to keep the general public off the road, to place barricades or notices to this effect along roads turning off from the old U. S. Highway 41 and entering or crossing the new highway at various places other than the two ends where construction was to commence and end and the new and old highways to rejoin. Whether the contractors and persons in charge of the construction had done this was one of the most widely disputed issues in the case. There was, however, evidence which would authorize the jury to believe that such signs and barricades were not in existence on the day in question, from which it may be inferred that the persons in charge of the construction had no objection to the general public using the roadway; that the general public actually did use the

roadway on that day and had been doing so for some time, and that no effort was being made to stop this from happening. There seems to be no Georgia case involving the question of whether it takes a completion of the project, withdrawal of the construction workers, and an actual turning over of the highway to the public or to governmental authorities for public purposes to mark the beginning point of a public highway, as contended by the plaintiff in error, or whether acquiescence in user by the public on the part of those upon whom rests the duty of including the public during construction would be sufficient, or whether mere user, even without acquiescence but with no affirmative act to bar such user, would turn a roadway under construction into a public highway. Under the wording of Code § 68-1504, supra, it would be necessary to show only that it was publicly maintained, and that the part in question was open for vehicular traffic. In Payne v. State Hwy. Commission, 136 Kan. 561 (16 Pac. 2d 509, 512), the following was held: "It is not open for travel until there has been extended to the public an invitation, express or implied, to use such highway. When a highway is open for travel may, under certain circumstances, be a question of law for the court. On the other hand, cases may arise where it would be a question of fact for the jury to determine under all the circumstances of the particular case. . . The construction of the highway must have reached a point where the ordinarily prudent person would be warranted in believing that it was open to public use and a safe place to travel." This is a sound rule of law, and the plaintiff's evidence in this case is sufficient to raise an issue of fact as to whether, considering the testimony as to the absence of barricades and warning signs, the general use of the road, and the point of construction reached at the time, an ordinarily prudent person would be warranted in believing that the highway was open and safe.

■ The driver of the defendant's truck testified that on the day in question there were cars on the highway, some going north and some going south; that the vehicles headed north were all using the east lane of traffic and those going south were using the west lane; that he was headed south in the east traffic lane and that he could not see the plaintiff's automobile because of the dust between them until just before they collided. The de-

fendant's driver was accordingly on notice that he was traveling south in a northbound traffic lane and was going against all of the traffic (other than trucks used in the construction work) in that lane, and he was also aware of the impaired visibility due to dust raised on the road by the traffic. His action in continuing south in the northbound traffic lane under this state of facts clearly presented a jury issue as to the defendant's negligence. Also on the question of whether the plaintiff's conduct amounted to such negligence as to bar recovery, Code § 105-603 provides as follows: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover. In other cases the defendant is not relieved, although the plaintiff may in some way have contributed to the injury sustained." Whether the plaintiff failed to show such care for his own safety is ordinarily a jury question. *Southern Stages, Inc.* v. *Clements,* 71 *Ga. App.* 169 (2c) (30 S. E. 2d 429). A plaintiff who recklessly tests a known and existing peril as a matter of law fails to exercise ordinary care for his own safety (*Southern Ry. Co.* v. *Hogan,* 131 *Ga.* 157 (1), 62 S. E. 64), but where the plaintiff has no knowledge of the existence of the peril he has a right to assume that contractors working on a public road will themselves exercise due care, and whether or not he has himself exercised the care required of him under the circumstances to avoid injury to himself is a jury question. *Doby* v. *W. L. Florence Construction Co.,* 71 *Ga. App.* 888 (4, 6) (32 S. E. 2d 527). The court erred in directing a verdict for the defendant on the theory that the plaintiff had by his lack of care barred himself from recovery under the evidence here. It is true that the plaintiff testified that he did not remember seeing the truck until the collision; that he remembered nothing after turning to the left to avoid the dust cloud raised by the station wagon ahead of him. The plaintiff had a brain concussion received in the collision and it is not unnatural that his recollection did not, even at the time of the trial, extend to the events immediately preceding his injuries. No expert witness testified to the fact, however, that such a condition ordinarily produces such a result, and this court is not taking judicial cognizance thereof. Aside from that fact, the evidence that is in the record is sufficient to present a jury question as to whether or not the plaintiff exercised ordinary care for his

own safety. Several persons testified to the amount of dust on the road, and the defendants' driver himself stated that he did not see the plaintiff's car until just before the collision and that his failure to do so was attributable to the cloud of dust. The jury might well conclude that the plaintiff could not see the approaching truck for the same reason the defendants' driver did not see his automobile. Under one view of the evidence the plaintiff would have no reason to anticipate traffic approaching in the lane he was using; under the undisputed evidence, the defendants' driver knew there was such traffic. Accordingly, the question of the plaintiff's contributory negligence was for the jury.

The trial court erred in overruling the demurrers to the amendment to the cross-action, and in denying the motion for new trial as amended.

*Judgment reversed. Gardner, P. J., and Carlisle, J., concur.*