## SOUTHERN RAILWAY COMPANY
v.
## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
### Civ. A. No. 15206.

United States District Court,
N. D. Georgia,
Atlanta Division.

Aug. 25, 1972.

---

6. *See* Defendant's Exhibit No. 13 (transcript of the testimony before the first meeting of creditors), at 209, 211–12.

Matthews, Walton, Smith, Shaw & Maddox, James D. Maddox, Rome, Ga., for plaintiff.

Greer & Murray, Atlanta, Ga., for defendant.

## ORDER

ALBERT J. HENDERSON, Jr., District Judge.

Bruce C. Clark, by and through his next friend, James R. Clark, recovered a verdict and judgment in the United States District Court for the Northern District of Georgia, against Sharon Santolla (now Sharon Santolla Kidd) and the Southern Railway Company in the amount of $70,000.00. That action arose out of a collision on August 29, 1968, in Austell, Georgia, between an automobile driven by Sharon Santolla and a Southern Railway train. Bruce C. Clark was a passenger in the automobile driven by Sharon Santolla and incurred personal injuries in the collision. At the time of the collision, Sharon Santolla was driving an automobile owned by her brother-in-law, Wallace Edward Averill. Mr. Averill had a $10,000.00 liability insurance policy on the automobile with Gulf Insurance Company as the insurer. At this time, Sharon's father, Guspardi Lee Santolla, who lived in Tazewell, Virginia, owned two automobiles insured with the defendant, State Farm Mutual Automobile Insurance Company.

In the suit brought by Bruce C. Clark, the district court approved a consent judgment, and of the $70,000.00 awarded, Gulf Insurance Company paid $10,000.00 into the court on behalf of Sharon Santolla and Southern Railway paid the balance of $60,000.00. The present suit is brought by the Southern Railway Company against State Farm for contribution in the amount of $25,000.00.

In June, 1968, Sharon Santolla graduated from high school in Tazewell, Virginia, where she lived with her parents. Prior to graduating from high school, she had been accepted for admission to Southwest Virginia Community College located in Tazewell, Virginia. After her graduation, Sharon went to Marietta, Georgia, to spend her summer vacation with her sister, Mrs. Carol Averill, prior to entering college in the fall.

While in Georgia, she procured a job at Six Flags Over Georgia. Her brother-in-law owned two automobiles and gave Sharon permission to drive one of them, a Karman Ghia, to and from work. Sharon was hired by Six Flags on July 30, 1968, to work each day of the week

except Friday on the 5:00 P.M. to 10:00 P.M. shift. However, by deposition Sharon testified that most of the time she worked double shifts from 8:00 A.M. to 10:00 P.M.

In this suit for contribution both parties have filed motions for summary judgment.

In its revised motion for summary judgment the defendant State Farm, contends that the plaintiff, Southern Railway, has neither obtained a judgment against Sharon Santolla nor procured a written assignment of the rights of Bruce C. Clark. The defendant contends that without a judgment or assignment, the plaintiff cannot maintain the present cause of action. The defendant relies on the terms of the insurance policy issued by State Farm to Guspardi Lee Santolla, and Georgia case law in support of this position. The terms of the policy, in pertinent part, are as follows:

> Action against Company (Part I). No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or written agreement of the insured, the claimant and the company.

> Any person or organization or the legal representative thereof, who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy.

State Farm contends that Southern Railway has not complied with this portion of the policy and consequently does not qualify for recovery.

The defendant claims that the Georgia case law establishes that only an insured, a beneficiary under the policy (one who has obtained a judgment against the insured), or the holder of a written assignment from either, may maintain a suit against the insurer under the policy.

While it may have been the intent of the insurance company to limit recovery only to those who have secured a judgment or an assignment, the court must look to case law and not to the plain language of the policy, to determine whether the plaintiff has a right of contribution from the defendant, State Farm.

■ Clearly, under Georgia law, contribution among joint tortfeasors is enforceable where one has paid more than his pro rata share of a judgment. Ga. Code Ann. §§ 105–2012, 37–303; Powell v. Barker, 96 Ga.App. 592, 101 S.E.2d 113 (1957). The question to be resolved is whether this right of contribution reaches the insurer of the joint tortfeasor from which contribution is sought.

■ It is undisputed that in a diversity action such as this, the substantive issues should be resolved according to Georgia law. Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); Budget Rent-a-Car Corp. of America v. Fein, 342 F.2d 509 (5th Cir. 1965). However, it should be noted that where the question involved is one not yet settled in the forum state, it is the duty of the federal court to determine from all the available data the rule it believes the courts would likely adopt. Putman v. Erie City Manuf. Co., 338 F.2d 911 (5th Cir. 1964).

While it does not appear that the exact question now presented has been considered under Georgia law, the case of Powell v. Barker, *supra*, in discussing the right of contribution between joint tort-feasors, did state:

> The right of contribution accruing upon payment by a joint tortfeasor of more than his pro rata share of the judgment is not an ex delicto right, but an equitable one which courts of law have recognized and applied on the theory that there is an implied contract on the part of one judgment debtor to contribute to another who

has paid more than his share of the obligation.

96 Ga.App. 596, 101 S.E.2d 117.

On this issue, it is stated in 18 Am. Jur.2d 18:

An indemnitor or insurer of one joint tort-feasor, upon discharging the common liability, ordinarily succeeds to the right to recover contribution from other joint tort-feasors, or their indemnitors or insurers. . . .

Furthermore, the Court of Appeals for the Fourth Circuit in American Employers Insurance Co. v. Maryland Casualty Co., 218 F.2d 335 (4th Cir. 1954) held:

It does not appear that Virginia court has as yet considered the specific question now before us, that is, whether the insurer of one joint tort-feasor may have contribution not only from the other joint tort-feasor, but also from the latter's insurance carrier; but this additional step would in our opinion be in harmony with policy of the Virginia law.

■ Considering the equitable basis for the doctrine of contribution under Georgia law, together with the logical extensions of the doctrine as discussed above, it must be concluded that, since under Georgia law one joint tort-feasor is entitled to contribution from another joint tort-feasor, it is only logical to extend the doctrine to allow contribution from the latter's insurer.

■ The court having concluded that the doctrine of contribution can be applied against the insurer of a joint tort-feasor, consideration must be given to whether the defendant in this case, State Farm, was the "insurer" of Sharon Santolla under the circumstances of this case. More specifically, was the automobile which Sharon Santolla was driving at the time of the collision a non-owned automobile covered by the policies issued by State Farm to Sharon's father?

The portions of the policies which are relevant to the issue of coverage read as follows:

State Farm Mutual Automobile Insurance Company a Mutual Insurance Company called Company agrees with the insured . . . subject to all terms of this policy:

Part I—Liability

Coverage A—Bodily Injury Liability

Coverage B—Property Damage Liability. To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:

A. bodily injury . . . sustained by any person . . . arising out of the ownership, maintenance or use of the owned automobile or any non-owned automobile . . . .

By way of definition, a

"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative.

"Relative" means a relative of the named insured who is a resident of the same household.

The question of coverage falls within the ruling of Grace v. Hartford Accident and Indemnity Co., 324 F.Supp. 953 (N. D.Ga. Mar.1970). In that case, the insured's employer rented an automobile and furnished it to the insured for however long he was on a business assignment in Georgia and for his unrestricted use while on the assignment. The court there held that the automobile was not furnished for the insured's "regular use" and consequently the insured was covered under the policy.

In the case at bar, Sharon's use of her brother-in-law's Karman Ghia was of a more restricted nature than that of the employee in Grace, supra. By deposition Sharon testified that she could use the Karman Ghia only to go to and from work; and that if she wanted to use the car for any other purpose she would have to get permission either from her sister or brother-in-law. Furthermore, she was only working at Six Flags during that summer before entering college.

Therefore, the Karman Ghia was not furnished to Sharon for her "regular use", but only for the restricted use of going to and from a summer job.

Accordingly, for the reasons stated herein, the plaintiff's motion for summary judgment is hereby granted and the defendant's motion for summary judgment is denied.

Let judgment issue accordingly.