In re Paul Emil BURNHAM, Debtor,

Paul H. ANDERSON, Jr., Trustee, Plaintiff,

v.

Paul Emil BURNHAM; The Citizens and Southern National Bank; Howard Turner d/b/a Howard Turner Leasing; and John L. Watson, Jr., Defendants.

Bankruptcy No. 80–00918A.
Adv. No. 80–0466A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

June 18, 1981.

288

Mitchell, Clark, Pate, Anderson & Wimberly, Atlanta, Ga., for Paul H. Anderson, Jr.

Charles F. Harris, Jonesboro, Ga., for Paul Emil Burnham.

John J. Goger, Atlanta, Ga., for Citizens & Southern Nat. Bank.

Floyd, Stanford & Hardy, P.C., Atlanta, Ga., for Howard Turner d/b/a Howard Turner Leasing.

B. D. Murphy, III, Jonesboro, Ga., for John L. Watson, Jr.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

The trustee's complaint filed on May 30, 1980 commenced this adversary proceeding to determine the validity, extent and priority of liens. This matter came on regularly to be heard at the duly scheduled hearing held August 8, 1980 in Atlanta, Georgia. Having considered the testimonial and documentary evidence presented to the Court, the arguments and briefs submitted by the parties and the pleadings on file, the Court makes the following decision.

## FINDINGS OF FACT

The findings of fact are adopted from the stipulation of facts entered into by all parties to this case.

1. Paul Emil Burnham, ("Burnham"), obtained a judgment against I.T.T. Industrial Credit Company, ("ITT"), which was rendered by the State Court of Clayton County, Georgia on August 28, 1975. This judgment was affirmed by the Georgia Court of Appeals. An Application for Writ of Certiorari to the Georgia Supreme Court was denied on January 25, 1980.

2. On February 26, 1980 the judgment of the Georgia Court of Appeals was made the final judgment of the State Court of Clayton County.

3. The original execution on this judgment was entered September 10, 1975 in the amount of $24,250.00 plus $16,00 costs and future interest computed at the rate of 7% per annum.

4. John L. Watson, Jr., ("Watson"), was Burnham's attorney of record at all times in this action against ITT.

5. Watson never recorded his attorney's lien against the judgment.

6. The Citizens and Southern National Bank, ("C & S"), obtained a judgment in the Superior Court of Clayton County, Georgia against Burnham on February 7, 1979 in the principal amount of $40,926.00 with $14,252.31 interest as of the date of judgment, $8,276.74 for attorney's fees and $95.75 costs. Execution was recorded in Clayton County on February 26, 1979.

7. On or about March 21, 1979 C & S filed a garnishment action in the State Court of Fulton County, Georgia against ITT. ITT was served with the original summons of garnishment on March 22, 1979 and a supplemental summons on February 19, 1980. The original summons was answered in a timely fashion and the answer was not traversed.

8. Howard Turner d/b/a Howard Turner Leasing, ("Turner"), obtained a judgment in the Superior Court of Henry County, Georgia against Burnham on October 31, 1977 in the principal amount of $6,100.00 plus $11,755.78 for attorney's fees and expenses of litigation and $22.00 costs. Execution was recorded in Clayton County on February 8, 1979.

9. On or about September 5, 1979 Turner filed a garnishment action in the State Court of Fulton County, Georgia against ITT. ITT was served with the original summons of garnishment on September 24, 1979 and a supplemental summons on February 5, 1980. The original summons was answered in a timely fashion and was not traversed.

10. ITT paid $31,768.23, (hereinafter referred to as "the fund"), into the registry of the State Court of Fulton County on March 28, 1980.

11. Burnham filed a petition under Chapter 7 of the Bankruptcy Code on March 20, 1980.

12. Paul H. Anderson, Jr., ("Trustee"), was appointed trustee by Court Order entered March 25, 1980.

13. The fund has been paid over to the Trustee and is now in a regular savings account at the Fulton National Bank.

## APPLICABLE LAW

The Court is confronted with various claims to the fund presently held by the Trustee. C & S and Turner each claim an interest in the fund by virtue of their judgment liens and their garnishment liens. Watson has asserted an attorney's lien against the fund. The sum of $7,900.00 is claimed as exempt by Burnham. An interest in that part of the fund not exempted by Burnham is claimed by the Trustee. All of the parties claim a pro-rata share of any interest earned by the fund while held on deposit in the savings account. With the exception that the Trustee does not dispute Burnham's right to claim an exemption, each of the parties claims that his interest in the fund is superior to the interest and claims of all of the other parties to this proceeding.

### I. Watson's Attorney's Lien

Watson represented Burnham in his action against ITT which ultimately produced the fund now held by the Trustee. No written contract was entered into concerning Watson's representation of Burnham. At the hearing of August 8, 1980 testimonial evidence was presented concerning the existence and terms of the oral contract between these two parties. Both Watson and Burnham testified that Watson agreed to represent Burnham on a contingent fee basis. Under the contract Watson was to receive 33½% of any recovery at the trial level. The percentage increased to a maximum of 50% of any recovery if the case was appealed. Watson claims a fee of 50% of the amount recovered from ITT.

An oral contract is legal and may be enforced by an action at law. *Venable v. Block*, 138 Ga.App. 215, 225 S.E.2d 755 (1976). In this case the Georgia Court of Appeals found that an oral exchange of promises was sufficient consideration to support a parol contract for legal services between an attorney and his client. After considering the testimony presented at the hearing, the Court concludes that Burnham and Watson entered into a valid and enforceable parol contract for the provision of legal services by Watson.

Watson claims an interest in the fund superior to the interests of Turner, C & S and the Trustee by virtue of his attorney's lien. The Trustee claims that Watson's lien is unperfected and therefore may be avoided under 11 U.S.C. § 545. Turner and C & S also claim priority over Watson because of Watson's alleged failure to perfect his lien.

The applicable statutory provision is Ga. Code Ann. § 9–613 which provides:

1. Attorneys at law shall have a lien on all papers and money of their clients in their possession, for services rendered to them, and may retain such papers until said claims are satisfied, and may apply such money to the satisfaction of said claims.

2. Upon suits, judgments, and decrees for money, they shall have a lien superior to all liens but tax liens, and no person shall be at liberty to satisfy said suit, judgment, or decree until the lien or claim of the attorney for his fees is fully satisfied; and attorneys at law shall have the same right and power over said suits, judgments, and decrees, to enforce their liens, as their clients had or may have for the amount due thereon to them.

3. Upon all suits for the recovery of real or personal property, and upon all judgments or decrees for the recovery of the same, attorneys at law shall have a lien on the property recovered, for their fees, superior to all liens but liens for taxes, which may be enforced by said attorneys at law, or their lawful representatives, as liens on personal and real estate, by mortgage and foreclosure, and the property recovered shall remain subject to said liens, unless transferred to bona fide purchasers without notice.

4. If an attorney at law shall file, as provided in section 67–2002, his assertion claiming lien on property recovered in suit instituted by him within 30 days after recovery of the same, then his lien shall bind all persons.

5. The same liens and modes of enforcement thereof which are allowed to

attorneys at law who are employed to sue for any property, upon the property recovered, shall be equally allowed to attorneys at law employed and serving in defense against such suits in case the defense is successful.

6. This section shall not affect the rights of attorneys under section 9–612 and 46–502 and decisions of the Supreme Court and Court of Appeals thereon.

Watson is asserting a lien under paragraph (2) of Ga.Code Ann. § 9–613.

█ The mere engagement by a prospective suitor of an attorney-at-law upon a contingent fee does not create an attorney's lien. However a lien is created in favor of the attorney at the time he files suit on behalf of his client. *Middleton v. Westmoreland*, 164 Ga. 324, 138 S.E. 852 (1927). Therefore an attorney's lien in favor of Watson was created on the date he filed suit against ITT on behalf of Burnham. The issue presented here is whether this lien was properly perfected.

Ga.Code Ann. § 9–613(4) provides:

"If an attorney at law shall file, as provided in section 67–2002, his assertion claiming lien on property recovered in suit instituted by him within 30 days after recovery of the same, then his lien shall bind all persons."

Ga.Code Ann. § 67–2002 provides for the means by which mechanics' and materialmen's liens may be perfected. To perfect a mechanics' or materialman's lien a claim of lien must be filed in the office of the clerk of the superior court of the county where the property against which the lien is asserted is situated. Ga.Code Ann. § 67–2002(2). By the terms of Ga.Code Ann. § 9–613, this method of perfecting a lien is applicable to attorney's liens.

It has been held that as between an attorney and his client and as between an attorney and other creditors of his client the recording of an attorney's lien is not essential to the lien's validity. *Burgin & Sons Glass Company v. McIntire*, 7 Ga.App. 755, 68 S.E. 490 (1910); *Coleman v. Austin*, 99 Ga. 629, 27 S.E. 763 (1896). The holding of these cases was limited in *Johnson v.*

*Giraud*, 191 Ga. 577, 13 S.E.2d 365 (1941) where it was held that the rule of *Burgin* and *Coleman* applies only to creditors existing at the time the property was recovered. The court stated that judgment lien creditors who acquired liens after the recovery of the property occupied positions similar to that of bona fide purchasers without notice. It was further stated by the Court:

"The purpose of our recording statutes is to protect both the lienholder and innocent persons acting in good faith but without means of discovering the lien of another. An attorney is given the privilege of protecting his lien by recording his claim thereto, and his failure to avail himself of such privilege brings upon him the same disaster that befalls other lienholders who neglect to record the lien as authorized by law."

191 Ga. at 582–583, 13 S.E.2d 365.

█ Watson argues that Ga.Code Ann. § 9–613(4) applies only to liens asserted against real property. The Court rejects this argument. No such distinction is made in the statute, nor have the Georgia courts differentiated between attorney's liens asserted against real property and attorney's liens asserted against other kinds of property.

█ After reviewing Ga.Code Ann. § 9–613 and relevant Georgia cases, the Court concludes that Georgia law requires the filing of a claim of lien in the county where the property subject to the lien is located for the perfection of an attorney's lien. Because Watson failed to file a claim of lien, his attorney's lien is unperfected.

Under 11 U.S.C. § 545(2) the trustee in bankruptcy may avoid the fixing of a statutory lien on the property of the debtor to the extent that the lien is not perfected or enforceable on the date of the filing of the petition against a bona fide purchaser that purchases such property on the date of the filing of the petition. Watson's lien was unperfected on the date Burnham's bankruptcy petition was filed, therefore his attorney's lien may be avoided by the Trustee pursuant to 11 U.S.C. § 545(2).

II. *Judgment Liens of Turner and C & S*

The Trustee has taken the position that neither Turner nor C & S acquired a lien against the fund until the service of the supplemental summons in their respective garnishment actions. In both cases service of supplemental summons occurred within 90 days of the date on which Burnham filed his bankruptcy petition. It is contended by the Trustee that the creation of these liens constitutes a preferential transfer under 11 U.S.C. § 547(b) which may be avoided.

At the hearing on the Trustee's complaint counsel for C & S and counsel for Turner claimed that they were surprised by the Trustee's position. These two parties sought to introduce into evidence copies of consent orders entered in their respective garnishment cases against ITT. The consent orders entered in these cases are virtually identical and provide for a stay of the garnishment proceedings pending the final resolution of the appellate proceeding in Burnham's action against ITT.

Neither party had a certified copy of the consent orders in question at the hearing. However the Court allowed the parties to send in certified copies subject to objection. Thereafter counsel for C & S submitted certified copies of documents concerning the garnishment action of C & S against ITT consisting of the affidavit for garnishment and the consent order entered by the State Court of Fulton County on May 10, 1979. Counsel for Turner submitted certified copies of documents concerning the garnishment action of Turner against ITT consisting of the affidavit for garnishment, the acknowledgment of service filed on behalf of I.T.T. on September 24, 1979 and the consent order entered by the State Court of Fulton County on September 24, 1979.

The Trustee objects to the admission of these consent orders into evidence. It is contended that these orders should not be admitted for the reason that they may be read so as to conflict with the stipulation of facts.

 Stipulations of fact fairly entered into are controlling and conclusive, and the courts are bound to enforce them. *A. Duda & Sons Cooperative Association v. United States*, 504 F.2d 970 (5th Cir. 1974). Parties who enter into a stipulation are bound thereby until such stipulation is modified. *Thrash v. O'Donnell*, 448 F.2d 886 (5th Cir. 1971). However, stipulations entered into freely and fairly generally are not set aside unless it is necessary in order to avoid manifest injustice. *Henry v. Commissioner of Internal Revenue*, 362 F.2d 640 (5th Cir. 1966).

C & S and Turner each stipulated as to the dates that a summons and supplemental summons were served in their respective garnishment cases. Furthermore each of these parties stipulated that the first summons served was answered in a timely fashion and was not traversed. The introduction of the consent orders is an attempt to establish a defense to the Trustee's contention that the liens of C & S and Turner date from the date supplemental summonses were served in their garnishment actions. By introducing the consent orders C & S and Turner are attempting to prove that their garnishment suits were continuing actions, therefore their liens relate back to the date of service of the original summons. The date on which the original summons was served in each case is not within the preferential period.

Under Georgia law, if a garnishee answers a summons of garnishment the garnishing plaintiff must traverse the answer within 15 days after it is served or the garnishee is automatically discharged of further liability with respect to the summons. Ga.Code Ann. § 46–504. Without the consent orders, the stipulation could be interpreted as a concession that the supplemental summons served in each case instituted a new garnishment action. If the Trustee's contention that the liens of Turner and C & S came into existence on the date of the service of supplemental summons is correct, the creation of these liens may constitute a preferential transfer.

 Neither C & S nor Turner deny the facts stipulated with regard to the garnishment actions. They have introduced docu-

mentary evidence, i. e. the consent orders, which may affect the way the stipulation is interpreted. Turner and C & S argue that the term "supplemental service" implies that the subject garnishment suits were continuing actions. That interpretation is plausible, therefore even without the consent orders this Court could determine from the stipulation that the supplemental summonses were issued in pending garnishment actions. The Court concludes that the admission into evidence of the consent orders submitted by Turner and C & S will do no violence to the stipulation of facts. Therefore, the Trustee's objection is overruled.

### B. *Merits*

The Trustee contends that the liens of C & S and Turner are voidable preferential transfers. It is the Trustee's position that no garnishment lien could attach to the judgment of Burnham against ITT until the judgment was affirmed and entered as the final judgment of the trial court. This event occurred on February 26, 1980 within 90 days of the filing of Burnham's bankruptcy petition. The Trustee further contends that even if a garnishment lien could attach to a judgment which has been appealed, the original summons served in each garnishment case involved herein did not create a lien on the fund because ITT's answer to the summons was not traversed by either C & S or Turner. According to the Trustee, the liens of Turner and C & S were created when a supplemental summons was served in their respective garnishment actions. In each case the supplemental summons was served within 90 days of the filing of Burnham's bankruptcy petition.

C & S disputes the argument of the Trustee. It is the position of C & S that it acquired a judgment lien on the fund on February 26, 1979, the date the judgment of C & S against Burnham was recorded on the general execution docket. Turner also takes the position that its lien dates from the time Turner's judgment against Burnham was recorded on the general execution docket. This recording took place on February 8, 1979.

The first matter to be considered is whether the liens of C & S and Turner were created by the recording of their judgments against Burnham or by the service of summons of garnishment in their respective garnishment actions against ITT. C & S and Turner argue that their judgments against Burnham constitute liens against all of Burnham's property including the judgment he obtained against ITT. The Trustee argues that a judgment is a chose in action, therefore a lien on Burnham's judgment could be created only through the service of a summons of garnishment.

■ The lien of a general judgment, when execution issues thereon and it is properly recorded on the general execution docket, constitutes a general lien on all of the defendant's property. Ga.Code Ann. §§ 110–507 and 39–701; *Pethel v. Liberal Finance Company*, 86 Ga.App. 773, 72 S.E.2d 563 (1952); *Bostwick v. Felder*, 73 Ga.App. 118, 35 S.E.2d 783 (1945). However a judgment does not create a lien on a chose in action. *Armour Packing Company v. Wynn*, 119 Ga. 683, 46 S.E. 865 (1903).

> "A judgment does not create a lien on a chose in action. The lien on a chose in action is created by the service of a summons of garnishment, and the lien dates from the date of the service of summons, and not from the date of the judgment."

*General Lithographing Company v. Sight & Sound Projectors, Inc.*, 128 Ga.App. 304, 304, 196 S.E.2d 479 (1973).

It must be determined whether a judgment is a chose in action. A chose in action is defined by statute in Georgia. It is provided in Ga.Code Ann. § 85–1801:

> "Personalty to which the owner has a right of possession future, or a right of immediate possession, wrongfully withheld, is termed by the law a chose in action."

■ A judgment is a debt of record; *McAfee v. Covington*, 71 Ga. 272 (1884), and an action on a judgment is an action of debt. *Powell v. Barker*, 96 Ga.App. 592, 101 S.E.2d 113 (1957). The Georgia Court of

**294**

Appeals defined the term "debt" in *Chavala Cooperative, Inc. v. Hortman*, 93 Ga.App. 505, 92 S.E.2d 236 (1956). There the Court said:

> "A debt in its general sense is a specific sum of money which is due or owing from one person to another, and denotes not only the obligation of one person to pay, but the right of the other party to receive and enforce payment by judicial action; it is that which one is bound to pay to or perform for another; that which one is obliged to do or suffer."

93 Ga.App. at 505, 92 S.E.2d 236.

▬▬▬ After carefully reviewing the law of the state of Georgia the Court determines that a judgment, as a debt of record, is encompassed within the definition of a chose in action. According to the Georgia Court of Appeals a debt is a specific sum of money due and owing from one person to another. Money is personal property for under Georgia law personalty "includes all such property as is movable in its nature; in fact, everything having value inherent in itself, or the representative of value, and not included in the definition of realty." Ga.Code Ann. § 85–1701. Payment of a debt can be enforced by judicial action. *Chavala Cooperative, Inc. v. Hortman, supra.* A debt is a chose in action for it is personalty which the person to whom the debt is owed has a right of immediate or future possession, and if possession is wrongfully withheld an action may be brought thereon.

▬▬ Because a judgment lien is a chose in action, a lien on a judgment is created by the service of summons of garnishment. *General Lithographing Company v. Sight and Sound Projectors, Inc., supra.* Therefore the liens of C & S and Turner were created by the service of summons in their respective garnishment actions.

Several issues are presented with regard to the date on which the garnishment liens of C & S and Turner were created. In each case an original summons and a supplemental summons were served. The Trustee contends that the Court must focus on the date the supplemental summons was served in each case in determining when the liens of C & S and Turner were created. C & S and Turner contend that if their liens date from the service of summons in their respective garnishment suits, the date on which the original summons was served is controlling.

Another issue is presented with regard to whether a garnishment lien could attach to Burnham's judgment against ITT while it was on appeal. It is argued by the Trustee that no lien could attach to the judgment until it became the final judgment of the trial court after it was affirmed on appeal. C & S and Turner contend that the lien could attach to the judgment on the date it was first rendered by the trial court even though it was thereafter appealed.

If no garnishment lien could attach to the judgment until it became the final order of the trial court after it was affirmed on appeal a third issue is presented. That issue is whether upon attachment the lien relates back to the date of the service of summons or dates from the time of attachment.

When a summons of garnishment is served the garnishee must file an answer not sooner than 30 days and not later than 45 days after the service of such summons, and the answer must be accompanied by the money or other property subject to garnishment. Ga.Code Ann. § 46–103. If the garnishee serves his answer in accordance with this statute the plaintiff must traverse the answer within 15 days after it is served or the garnishee is automatically discharged of further liability with respect to the summons so answered. Ga.Code Ann. § 46–504.

It was stipulated by the parties that in each garnishment case ITT filed a timely answer to the summons of garnishment, and the answer was not traversed. The Trustee contends that if the original service of summons created a lien on Burnham's judgment against ITT, the lien was discharged by the failure to traverse the answer.

In *Daniels v. Meinhard Brothers & Company*, 53 Ga. 359 (1874), the plaintiff insti-

tuted a garnishment action against an insurance agency. The summons was answered, and the answer was not traversed. Thereafter a second summons of garnishment was served on the insurance agency. It was held that no lien on the fund held by the insurance agency was created by the first service of summons. The Court said:

"When the garnishees answered the first summons and there was no traverse of that answer, they were discharged from any liability under that proceeding. From the facts shown by the record, they could have made no other answer than the one they did. They had no money or effects of the principal debtor in their hands. Those proceedings being thus ended or determined, another garnishment was served upon them, and under this, money was returned into court. No lien under the first garnishment could attach to this fund because it was not a garnishment pending; it was functus officio, else there was no necessity for the second garnishment."

53 Ga. at 363.

The instant case may be distinguished from *Daniels*. Each of the garnishment cases involved herein was stayed pending resolution of the appellate proceedings in Burnham's case against ITT. Consent orders concerning the stay were entered in each garnishment suit. Both consent orders contain the following provision:

"In order to avoid the necessity of refiling the garnishment action, the Garnishee and the Plaintiff do hereby agree to the entry of an order staying these proceedings pending the final resolution of the appellate proceeding in the above-referenced litigation, which arose in Clayton County. Within thirty (30) days of the entry of a final order and judgment in the Clayton County proceedings, the Garnishee will file an answer to the garnishment action of the Plaintiff and at this time pay into the registry of this Court what, if any, funds it then has on hand due and owing to the Defendant."

■ It is clear from the wording of the consent orders that the original garnish-

ment actions of C & S and Turner were not terminated. In each case ITT was directed to file an answer within thirty days of the entry of a final order and judgment in the Clayton County proceedings. There is no indication that either C & S or Turner was required to serve a supplemental summons on ITT in order to reinstitute their respective garnishment actions. Therefore the service of supplemental summons amounted to nothing more than a mere precautionary measure. Because a garnishment action was pending at the time the supplemental summons was served in each case, the Court concludes that the controlling date for determining when the liens of C & S and Turner were created is the date the original summons was served.

■ The next issue which must be resolved is whether a garnishment lien can attach to a judgment which has been appealed. It has been held that the test of whether funds in the hands of a third person are subject to garnishment is whether or not the principal debtor could himself recover such funds by suit directly against the garnishee. *Foster v. Southern Bell Telephone & Telegraph Company*, 85 Ga.App. 504, 69 S.E.2d 644 (1952); *Adair-Levert Inc. v. Atlanta Envelope Company*, 70 Ga.App. 685, 29 S.E.2d 323 (1944). In other words, a garnishment cannot reach assets in possession of the garnishee which the defendant himself could not recover from the garnishee. *J. Austin Dillon Company v. Edwards Shoe Stores, Inc.*, 53 Ga.App. 437, 186 S.E. 470 (1936).

■ An appeal suspends but does not vacate a judgment. Ga.Code Ann. § 6–502. Although a judgment which has been appealed remains operative, it is incapable of enforcement pending appeal. *Haygood v. King*, 161 Ga. 732, 132 S.E. 62 (1926). In that case the plaintiff obtained a judgment against the defendant which was appealed. The plaintiff sought and was granted an interlocutory injunction which prohibited the defendant from transferring some of his crops to a third party during the pendency of the appeal. This decision was affirmed by the Georgia Supreme Court. In its opinion the Georgia Supreme Court said:

"An appeal from a judgment of a justice's court suspends but does not vacate the judgment. The judgment remains operative with all of its incidents, save in so far as it is incapable of enforcement pending the appeal. Accordingly a creditor having a justice's court judgment from which an appeal has been taken, and who is otherwise entitled to injunctive relief, does not come within the provisions of the Civil Code, § 5495, which inhibits creditors without lien, as a general rule, from enjoining their debtors from disposing of property." (citations omitted).

161 Ga. at 732, 132 S.E. 62.

■ This case indicates that while a judgment which has been appealed cannot be enforced, the judgment creditor has a protectable interest, i. e. a judgment lien on the debtor's property pending appeal. However this interest is not vested. *Mulherin v. Kennedy*, 120 Ga. 1080, 48 S.E. 437 (1904). In this case the court of the ordinary set apart certain property to a widow as a year's support. It was held by the Georgia Supreme Court that the appeal of the judgment of the court of the ordinary to the superior court effected a suspension of the judgment, therefore the widow had no vested right to the property until the judgment was affirmed.

■ As garnishing creditors of Burnham, C & S and Turner could reach only those assets in the hands of ITT which could be recovered from ITT by Burnham. While Burnham's judgment against ITT was on appeal, Burnham had a protectable interest in the property of ITT by virtue of his judgment lien. However because the judgment was suspended and therefore unenforceable during the pendency of the appeal, no assets could be recovered by Burnham from ITT until the judgment was affirmed and made the final order of the trial court. Therefore the garnishment liens of C & S and Turner attached on February 26, 1980, the date Burnham's judgment against ITT became the final judgment of the trial court after appeal.

The next issue presented is whether the liens of C & S and Turner date from February 26, 1980 or from the date the original summons was served in the garnishment actions. Ga.Code Ann. § 46–301(a) provides:

"(a) All debts owed by the garnishee to the defendant at the time of service of summons of garnishment upon the garnishee and all debts accruing from the garnishee to the defendant from the date of service to the date of the garnishee's answer shall be subject to process of garnishment, and no payment made by the garnishee to the defendant or to his order, or by any arrangement between the defendant and the garnishee after the date of the service of the summons of garnishment upon the garnishee shall defeat the lien of such garnishment."

This statute is similar to former Ga.Code Ann. § 46–203 which provided:

"Whenever a summons of garnishment shall be served on any person, and such person, after the date of such service, shall become indebted to the defendant, such subsequent indebtedness immediately upon its accruing shall become subject to the lien of such garnishment, and no payments made by the garnishee to the defendant or to his order after the date of the service of the garnishment shall defeat the lien of such garnishment. The service of a summons of garnishment shall in all cases operate as a lien on all the garnishee's indebtedness at the date of the service and also on all future indebtedness accruing up to the date of the answer, and such lien shall not be defeated by any payments by the garnishee or overdrafts by the defendant or other arrangements between the defendant and the garnishee. This section shall not operate to change or alter the laws exempting from the process and liabilities of garnishment the daily, weekly, or monthly wages of journeymen mechanics and day laborers."

Speaking of Ga.Code Ann. § 46–203 the Georgia Court of Appeals said in *Ownby v. Wagner*, 64 Ga.App. 433, 435, 13 S.E.2d 686 (1941):

"This section was intended to make plain that upon the service of a summons of garnishment a lien was created in favor of the plaintiff on all the indebtedness of the garnishee to the defendant in fi. fa., over and above the exemption at the time of the service of the summons, and upon all future indebtedness accruing up to the date of the answer, and that the lien should attach immediately upon the accruing of the indebtedness, and should from that time, the date of accruing, operate as a lien in favor of the plaintiff; . . ."

Because of the similarities between former Ga. Code Ann. § 46–203 and Ga. Code Ann. § 46–301(a) the Court determines that the above quoted interpretation of Ga. Code Ann. § 46–203 may be applied to Ga. Code Ann. § 46–301(a).

The judgment debt owed by ITT to Burnham was suspended by the appeal taken from that judgment. During the pendency of the appeal this debt could not be enforced against ITT, therefore this indebtedness did not actually accrue until the judgment was made the final judgment of the trial court after it was affirmed on appeal. Because ITT was not required to file an answer in the garnishment actions instituted by C & S and Turner until the appeal of Burnham's judgment was finally resolved, the judgment is a debt accruing between the date of service of summons and the garnishee's answer and falls within the terms of Ga. Code Ann. § 46–301(a). According to the ruling of the Georgia Court of Appeals in *Ownby v. Wagner, supra*, the garnishment liens of C & S and Turner attached to the judgment debt on the date it accrued, i. e. February 26, 1980, and their respective liens date from that time.

■ It must now be determined whether the liens of C & S and Turner constitute preferential transfers. The elements of a preferential transfer consist of: (1) a transfer of the debtor's property; (2) to or for the benefit of a creditor; (3) for or on account of an antecedent debt owed by the debtor before such transfer was made; (4) made while the debtor was insolvent; (5) made on or within 90 days before the date of the filing of the petition, or between 90 days and one year before the filing of the petition if the creditor was an insider and had reasonable cause to believe the debtor insolvent at the time of the transfer; and (6) the transfer enables the creditor to receive more than he would have received if the case were a liquidation case, the transfer had not been made and the claims were allowed or disallowed to the extent permitted by Title 11. 11 U.S.C. § 547(b); 4 *Collier on Bankruptcy* (15th Edition) ¶ 547.-01, p. 547–10. All of these elements must be present before a transfer may be determined to be preferential. *In re Kelley*, 3 B.R. 651, 2 C.B.C.2d 15 (1980, B.C. E.D. Tenn.). The trustee seeking to avoid the transfer bears the burden of proving the existence of these elements. 4 *Collier on Bankruptcy* (15th Edition) ¶ 547.01, p. 547–11.

■ Under the Bankruptcy Code a transfer encompasses "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest." 11 U.S.C. § 101(40). This definition is broad enough to include any judicial proceeding that fixes a lien upon the property of a debtor. 4 *Collier on Bankruptcy* (15th Edition) ¶ 547.12, p. 547–42. Therefore a transfer occurred when the garnishment liens of C & S and Turner were created. These transfers were made to or for the benefit of Turner and C & S, creditors of Burnham's estate. The transfers were made on account of the judgment rendered by the Superior Court of Clayton County, Georgia for C & S and against Burnham on February 7, 1979 and on account of the judgment rendered by the Superior Court of Henry County, Georgia for Turner and against Burnham on October 31, 1977. Clearly these judgments are antecedent debts. The liens of Turner and C & S were created on February 26, 1980, the date the judgment of Burnham against ITT became the final judgment of the trial court after the judgment was affirmed on

appeal. As Burnham filed his bankruptcy petition on March 20, 1980, the creation of these liens occurred within 90 days of said filing.

For the purposes of 11 U.S.C. § 547 the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition. 11 U.S.C. § 547(f). This presumption relieves the trustee of the burden of presenting evidence on the issue of insolvency unless the defendant creditor first comes forward with some evidence of solvency. Rule 301 of the Federal Rules of Evidence; *In re Butler*, 3 B.R. 182, 1 C.B.C.2d 533 (1980, Bkrtcy. B.C. E.D. Tenn.); 4 *Collier on Bankruptcy* (15th Edition) ¶ 547.03[5], pp. 547–24—547–25. As neither Turner nor C & S put on proof to overcome the presumption of insolvency, it must be concluded that Burnham was insolvent on the date the garnishment liens of Turner and C & S were created.

By acquiring garnishment liens against the fund held by I.T.T., Turner and C & S were enabled to receive more than they would have received if the case were a liquidation case, the liens had not been created, and they received payment of their debts to the extent provided by the provisions of Title 11 of the United States Code for without their garnishment liens, C & S and Turner would be unsecured creditors with regard to the fund.

From the foregoing the Court concludes that all of the elements of a preferential transfer are present in this case with regard to the garnishment liens of C & S and Turner. Therefore these liens may be avoided by the Trustee under 11 U.S.C. § 547(b).

III. *Burnham's Exemption*

Burnham claims $7,900.00 of the fund as exempt property under 11 U.S.C. § 522(d)(5). Under 11 U.S.C. § 522(b) a debtor may choose to exempt property under 11 U.S.C. § 522(d) unless prohibited from doing so by state law. Ga. Code Ann. § 51–1601 which became effective on March 24, 1980 prohibits a debtor from utilizing the provisions of Section 522(d).[1] However, paragraph 2(A) of Section 522(b) indicates that the state law which governs the exemption of property is that which is in effect on the date the bankruptcy petition was filed. The pertinent part of this section reads:

"(b) Notwithstanding Section 541 of this Title, an individual debtor may exempt from property of the estate either ... (2)(A) any property that is exempt under Federal Law, other than sub-section (d) of this section, or State or local law that is applicable on the date of the filing of the petition..."

It was held in *In re Crump*, 2 B.R. 222, 1 C.B.C.2d 378 (1980, Bkrtcy. B.C. S.D. Fla.) that the value and status of exempt property is determined as of the date the bankruptcy petition is filed.

When Burnham filed his petition there was no state law in existence prohibiting him from choosing to exempt property pursuant to Section 522(d). In 3 *Collier on Bankruptcy* (15th Edition) Paragraph 522.-02, p. 522–11 it is said:

"Representative Butler, accompanying the House vote, remarked that Section 522(d)(1) should be construed to allow states to exercise the veto power only by affirmative act i. e., as a specific prohibition against such a choice. The state may not exercise a veto by failure to act." (footnotes omitted).

The Court concludes that because at the time Burnham filed his bankruptcy petition the Georgia Legislature had not enacted Ga. Code Ann. § 51–1601, Burnham may exempt property under Section 522(d) of the Bankruptcy Code.

Under Section 522(d)(5) a debtor may exempt his aggregate interest, not exceed in value $400.00 plus any unused amount of

1. Acts, 1980, p. 952 which enacted Ga. Code Ann. §§ 51–1601 and 51–1301.1 provides for its own repeal effective July 1, 1981. However the Georgia Legislature reenacted this law with minor changes in the amount of certain exemptions. This new act was signed by the Governor of Georgia on April 7, 1981.

the exemption for residential real property or a burial plot provided under paragraph (1) of Section 522(d) in any property. As Burnham did not exempt residential real property or a burial plot he is claiming an exemption in the fund in the amount of $7,900.00.

Although one court has held that the term "any property" in Section 522(d)(5) refers only to any property described in Section 522, *In re Smith*, 5 B.R. 500, 6 B.C.D. 667 (1980, Bkrtcy. D.C. C.D. Ill.), this term has generally been broadly construed. It has been held that there is no limitation in Section 522(d)(5) with respect to the character of property which may be exempted thereunder. *In re Nichols*, 4 B.R. 711, 6 B.C.D. 597 (1980, Bkrtcy. B.C. E.D. Mich.); *In re Upright*, 1 B.R. 694, 5 B.C.D. 1124 (1979, Bkrtcy. B.C. N.D. N.Y.). This Court has followed the holding of *Nichols* and *Upright*. *In re Boozer*, 4 B.R. 524, 6 B.C.D. 529 (1980, Bkrtcy. B.C. N.D. Ga.). Under Section 522(d)(5) debtors have been allowed to exempt business inventory; *In re Cramer*, 3 B.R. 428, 6 B.C.D. 17 (1980, Bkrtcy. B.C. D. Ariz.), *In re Upright, supra*; a common law arbitration award, *In re Laird*, 6 B.R. 273, 6 B.C.D. 998 (1980, Bkrtcy. B.C. E.D. Pa.); and a credit union account, *In re Collins*, 5 B.R. 675, 6 B.C.D. 834 (1980, Bkrtcy. B.C. N.D. Calif.). These cases exemplify the liberal construction that has been given to Section 522(d)(5).

From the foregoing the Court concludes that Burnham may exempt $7,900.00 of the fund.

In his answer to the Trustee's complaint Burnham asserted as a defense that all liens or claims against the fund are avoidable to the extent necessary to allow Burnham's claim of exempt property. Although Burnham did not specifically pray for avoidance of the judgment liens of Turner and C & S, this defense prompted arguments on whether a judicial lien which came into existence prior to the effective date of the Bankruptcy Reform Act of 1978 can be avoided. The issue was mentioned briefly at the hearing of August 8, 1980, and the Court requested the parties to submit briefs on the matter.

In the letter briefs filed by Burnham, C & S and Turner the issue of the constitutionality of 11 U.S.C. § 522(f) was addressed. This issue has been rendered moot by the Court's conclusion that the creation of the garnishment liens of C & S and Turner constituted a preferential transfer. Section 522(c) of the Bankruptcy Code provides:

(c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such claim had arisen, before the commencement of the case, except—

(1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title: or

(2) a lien that is—

(A) not avoided under section 544, 545, 547, 548, 549, or 724(a) of this title;

(B) not voided under section 506(d) of this title; or

(C)(i) a tax lien, notice of which is properly filed; and

(ii) avoided under section 545(2) of this title.

It is stated in 3 *Collier on Bankruptcy* (15th Edition) ¶ 522.27, p. 522–66:

"Section 522(c)(2) adopts the long standing rule that the security of a creditor is preserved despite the claim of exemption by the debtor. If the lien is subject to one of the trustee's or debtor's avoiding powers under the Code, however, the exempt property will be protected from the operation of the lien. The Code, under sections 544, 545, 547, 548, 549 and 724(a) allows a trustee to avoid certain liens. Although the primary purpose of these sections is to preserve the debtor's estate for the benefit of creditors, section 522(c) makes it clear that the trustee's avoiding powers annul all liens subject to these powers, not only as against the property which remains in the estate, but as against that which may be claimed as exempt."

Because the garnishment liens of C & S and Turner have been avoided by the Trustee

under 11 U.S.C. § 547, there is no need to address the issue of the constitutionality of 11 U.S.C. § 522(f).

## CONCLUSIONS OF LAW

1. Burnham and Watson entered into a valid and enforceable parol contract for the provision of legal services by Watson.

2. Watson does not have a perfected attorney's lien in the fund.

3. The consent orders introduced into evidence by C & S and Turner do not contradict the stipulation of facts entered into by the parties to this proceeding and are therefore admissible.

4. The creation of the garnishment liens of C & S and Turner constituted a preferential transfer which may be avoided by the Trustee under 11 U.S.C. § 547(b).

5. Burnham may exempt $7,900.00 of the fund under 11 U.S.C. § 522(d)(5).

In accordance with the foregoing it is

ORDERED that Burnham may exempt $7,900.00 of the fund; and it is further

ORDERED that the remaining balance of the fund shall be turned over to the Trustee as unencumbered property of the estate; and it is further

ORDERED that the parties shall bear their own costs of this proceeding.