Ricks *vs.* Broyles, receiver.

1. When money awaiting the result of litigation is in the possession of a receiver at the place of permanent custody, and he has no further duty in respect to it but that of preservation, it is already in court, and the receiver cannot part with his custody by depositing in bank or otherwise, save at his own risk, without some order, leave or direction authorizing him so to do.

2. *Morgan vs. Hardee,* 71 *Ga.* 736, and *Phillips vs. Lamar,* 27 *Ga.* 228, adjudicate nothing to the contrary of the foregoing.

3. A court of equity in Georgia has no official banker, and no bank but its receiver.

4. A general deposit is a loan, and transforms the funds from ready money into a chose in action.

5. A court of errors must take judicial notice of human nature. The special facts vindicate the rule of responsibility founded on general principles.

July 5, 1887.

Receivers. Bailments. Equity. Banks. Before Judge Boynton. Fulton Superior Court. March Term, 1886.

Ricks sued out a rule against E. N. Broyles, as receiver, and others, reciting that Broyles had been appointed re-

ceiver under a bill filed by Shields & Co. against J. B. Redwine and others; that as such receiver it was his duty to take charge of certain furniture and to dispose of it and hold the proceeds subject to the order of the court; that he did dispose of it; and that there were various claims to the fund whose priorities had been adjudicated. It was ordered that the receiver report to the court the amount in his hands, and show cause why he should not pay to Ricks the amount due on two mortgage *fi. fas.* held by him.

The receiver filed his answer, the only portion of which material to be set out being, in substance, as follows: When he received the proceeds of the sale of the property, he deposited the money in the bank of John H. James, in Atlanta, in his name as receiver, making the deposit separate from his individual account and two other accounts which he had as executor and administrator of certain estates. Then the bank was generally regarded as good, solvent and safe, and respondent so regarded it and acted in good faith and according to his best judgment. It was not then settled to whom the fund should ultimately be paid, but there were various claimants, and it was uncertain how long it would be before the controversy was settled; and the deposit was made to await the result of the contest, or until the court should order the fund to be paid to the creditors. Deducting from the fund his disbursements and commissions, there would be left in his hands $892.58. On or about May 15, 1884, the bank failed, having on deposit in the name of respondent as receiver $1,123.90. His individual account was overdrawn to the amount of $153.99, and he was further indebted to the bank $500. The bank made a voluntary assignment for the benefit of its creditors, giving certain preferences. A bill was filed by the non-preferred creditors, attacking the assignment, and a long and doubtful litigation was imminent. Finally the creditors made a compromise, and respondent, after advising with several prominent attorneys, agreed to a settlement, by which he was permitted to pay the amount

which he was individually indebted towards the satisfaction of his accounts as receiver and as administrator and executor, so that he thereby received, as receiver, $459.52, leaving a balance of $662.40 as a claim against the bank. On this sum, by the terms of the compromise, part was paid in cash, leaving a balance of $400, for which he received certain shares of stock in an association formed in pursuance of the compromise of the creditors, of the par value of the amount stated, and bearing interest at 4 per cent. per annum. The stock is now worth about thirty cents on the dollar in market. He acted in good faith and for the best interest of the fund, and received more than could have been obtained otherwise. He asks that the court affirm his action, expresses his willingness to transfer the stock to such creditors as the court may direct, and prays that, upon his doing so and paying over $492.58, the amount of cash in hand, he be discharged from all further liability.

The movant demurred to so much of the answer as set forth that respondent should not be chargeable with the loss of any part of the fund in his hands as receiver. The ground of the demurrer was that the deposit was general, made without the direction of the court, and was in law a loan to James.

The case was submitted to the presiding judge without a jury. On the hearing, it was shown by the receiver that the bank was a private one, and that the deposit was made without any order of court. The presiding judge filed a decision distributing the fund. As to the liability of the receiver for the money lost and for which the stock was accepted, he held that this was done in good faith and after the exercise of due diligence, and that any loss therefor should fall on Ricks and not the receiver; and that Ricks should recover the stock at its par value, or, on his refusal to accept it, that the receiver should sell it, pay over the proceeds to Ricks and be entitled to a credit for its face value. To this decision Ricks excepted.

A. M. Speer, for plaintiff in error.

E. N. Broyles, *in propria persona;* Abbott & Smith; Hoke Smith ; Haygood & Martin, for defendants.

Bleckley, Chief Justice.

1. When money awaiting the result of litigation is in the possession of a receiver at the place of permanent custody, and he has no further duty in respect to it but that of preservation, it is already in court, the receiver being the hand of the court to hold it, and he cannot pay it out, or part with his actual custody of it by depositing it in bank, or otherwise, save at his own risk, without some order, leave or direction authorizing him so to dispose of it. He is for the court that appointed him as much a final custodian as is the Bank of England for the court of chancery. His poundage or commissions are compensation for his risk, which is that of an official bailee for reward; and while he may not be bound for more than ordinary diligence, his diligence is to be exercised in keeping the money, not in putting it out on deposit, either general or special. A general deposit in bank is a loan, and that the loan was made in good faith and entered to his credit in bank as receiver, will not avail him. Though without any moral fault, or any legal fault but that of parting with the money, he is liable to make good the loss resulting from his banker's insolvency.

2. The case of *Morgan vs. Hardee,* 71 *Ga.* 736, is no adjudication by this court that a receiver has a right to substitute the good credit of a banker for his own responsibility as ultimate custodian. To rule, as that case does, that there was no such material error of law as to require a new trial, is not to rule that there was no error of law committed by the court below, but rather that under the special facts it was unnecessary to probe the alleged errors to the bottom. *Morgan vs. Hardee* is not to be extended beyond its own facts; it is no interpretation of any gen-

eral principle or rule of law. *Phillips vs. Lamar*, 27 *Ga.* 228, settles nothing as to receivers, but only as to sheriffs, receivers being spoken of merely *arguendo* by the judge delivering the opinion.

3. High on Receivers, Kerr on Receivers, Lewin on Trusts, Perry on Trusts, Story on Bailments and on Agency, as cited in the argument, may be conceded to apply in Georgia as elsewhere to receivers, until the fund reaches its final form and there is no duty left but to hold it for the court at the place of final custody. Then it is in court. The court in Georgia has no official banker, and no bank but the receiver himself. He is its Bank of England, and the Bank of England would not be excused by depositing with John H. James, were his house in London instead of Atlanta. While the fund is passing down the brooks and rivers, it may flow along the usual channels of general business, but when it reaches the ocean, it must stop, unless the court orders a refluent current. There is no beyond. The code contemplates that a receiver, who merely has possession and holds, shall hold subject to the direction of the court. §3149. And the discretion of all trustees in the use of money is, by §2330 of the code, considerably narrowed. *Brown vs. Wright*, 39 *Ga.* 96. To invest even in State bonds, a receiver must have orders. Code, §275.

4. The moment the deposit was made, the credit of the banker was substituted for the money. Though in loose speech it would be said that this was done for safe keeping, in literal truth it was done, not to keep the money at all, but to part with it on the banker's credit—to make it cease to be the money of the receiver, and become the money of the banker, with the expectation of drawing from him on demand at a future time other money to take its place in the coffers of the court. It was a loan by the receiver to the banker, made under the name and with all the incidents of a general deposit. The fund was transformed into a chose in action. A receiver, whose duty is

one of mere custody and not the transaction of business, cannot at his own will lay the foundation of an action or render an action necessary. He cannot even sue or defend without leave. 11 *Ga.* 417.

5. While the case is ruled on broad grounds and is meant to stand on general principles, it is right to call attention to one aspect of the special facts. The banker was already the receiver's personal banker, and continued to be so, with the result that when insolvency occurred, the receiver was indebted to him by note and had also overdrawn his personal account. It is a fair inference that whilst the receiver as such was lending to his banker, the latter was lending to him as an individual. There was no mixture of accounts, no mixture of funds, on the books, but there was probably no attempt to prevent mixture of money in the vault, or when used by the banker in his general business, including that with the receiver on his note and overdrafts. Though no such thing was premeditated or designed, it is and must remain uncertain whether some of the money put into the bank as receiver did not come back to the receiver as an individual on his drafts or as consideration for his note. With a court-fund large enough, a considerable banking business might go on prosperously in this way for an indefinite time. Indeed, it is but a question of amount and length of loan without interest as to whether banks, patronized by chancery through receivers, would not outstrip all rival institutions, at least in disposition, if not in ability, to accommodate the receivers. A court of errors must take judicial notice of human nature.

Judgment reversed.