## McDOUGAL v. CENTRAL UNION CONFERENCE ASS'N OF SEVENTH DAY ADVENTISTS.

### No. 1970.

Circuit Court of Appeals, Tenth Circuit.

March 28, 1940.

William H. Scofield, of Denver, Colo., for appellant.

C. A. Sorensen, of Lincoln, Neb., for appellee.

Before PHILLIPS, BRATTON, and HUXMAN, Circuit Judges.

HUXMAN, Circuit Judge.

This is an action by Robert L. McDougal, as trustee in bankruptcy of the estate of M. E. Carlson, a bankrupt, against the Central Union Conference Association of the Seventh Day Adventists, seeking to set aside a deed purporting to convey four residence properties in Denver, Colorado. Recovery of the property is sought by the trustee on the ground that the transfer was void under Section 60, sub. b, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. b, and Section 67, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. e.

The conveyance of the property was made by deed dated January 31, 1938. The petition in bankruptcy was filed March 8, 1938, and Carlson was adjudged a bankrupt on March 25, 1938. The transaction must therefore be viewed in light of the provisions of the Bankruptcy Act as they existed prior to the Chandler Amendment, 52 Stat. 840, ch. 575, 11 U.S.C.A. § 1 et seq.

The consideration for the deed from Carlson to appellee was the surrender of two notes for $5,000 each, given by him to appellee, evidencing a subscription made by him in that amount to a building fund for a library to be erected at a college maintained by appellee.

Section 96(b) in part reads as follows: "(b) If a bankrupt shall * * * have made a transfer of any of his property, and if, at the time of the transfer, * * * or of the recording or registering of the transfer if by law recording or registering thereof is required, and being within four months before the filing of the petition in bankruptcy or after the filing thereof and before the adjudication, the bankrupt be insolvent and the * * * transfer then operate as a preference, and the person receiving it or to be benefited thereby, or his agent acting therein, shall then have reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

Section 107(e) in part reads as follows: "(e) All conveyances, * * * of his property or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this title within four months prior to the filing of the petition, with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor, except as to purchasers in good faith and for a present fair consideration; * * *."

M. E. Carlson was extensively engaged in the contracting business in Colorado. For a number of years he had been engaged in highway construction work. The state of Colorado had awarded to him contracts for road and bridge construction and other similar projects totaling approximately $10,000,000, a considerable portion of such work being in the city of Denver. He had a large amount of equipment and did business on a large scale. During 1937 he became financially embarrassed and was hard pressed for money, which resulted in his inability to meet his bills. Approximately $16,000 in labor claims had been filed against him with the highway department.

Many of his checks given in payment of his payroll were turned down for want of funds; his account at the bank had become so uncertain that he was requested to remove it. On two or three different occasions he had overdrawn his bank account. His credit had become strained and the bank was pressing him at about the time the transaction in question took place, in fact, the account at the bank was closed some ten days later.

In determining whether a preferred creditor has reasonable cause to believe a preference will be effected, every case must be viewed and interpreted in the light of its own facts, circumstances and surroundings. Joseph Wild & Co. v. Provident Life & Trust Co., 214 U.S. 292, 29 S.Ct. 619, 53 L.Ed. 1003. It is not required that the preferred creditor have actual knowledge as to the result of the transaction in creating a preference, nor that he have any actual belief on that question. All that is necessary is that he have reasonable cause to believe that a preference will be created. He need not know positively that the result of the transaction would be to effect a preference, but it will be sufficient if he have such knowledge or notice of such facts and circumstances as would incite a person of reasonable prudence under similar circumstances to make inquiry. And if inquiry would lead to the development of facts essential to the knowledge of the situation, he will be chargeable with knowledge thereof. Toof v. Martin, 13 Wall. 40, 49, 20 L.Ed. 481; Pirie v. Chicago Title, etc., Co., 182 U.S. 438, 21 S.Ct. 906, 45 L.Ed. 1171; Dutcher v. Wright, 94 U.S. 553, 24 L.Ed. 130.

Carlson was an enthusiastic, active member of the Seventh Day Adventists Church. He was regarded as one of the outstanding men in the church. He was prominent in its affairs and its councils. He was not only generous in his contributions to the church and to appellee, but was liberal in his general charitable contributions. In 1936 he made charitable contributions amounting to some $36,000. He also made large charitable contributions in 1937. At different times he had purchased and contributed automobiles to various ministers of the church. By his donations he had kept a considerable number of students in school for a number of years. All of this was known to appellee and its officers. In 1937, he engaged with the leaders of appellee in conversation regarding the construction of a library building; as a matter of fact, he was largely responsible in promoting the idea, and agreed to contribute $10,000 toward a construction fund for that purpose. Two $5,000 notes evidenced his contribution to this fund. Relying to a great extent on this contribution as a nucleus of the fund, appellee commenced the work of constructing the library building. When his first $5,000 note fell due, he did not promptly pay. After some time, correspondence ensued with him concerning his contribution and the need for receiving it, and officers of appellee commenced to press him for payment of the first note, urging their great need for this money. He replied, stating that he was hard pressed for immediate cash and was unable to meet the note at that time, but that he hoped to do so in the near future. Later he wrote stating that he hoped he would be able to meet the note by May. On January 31, 1938, he proposed to a member of the board representing appellee, then in session in Denver, that he would convey the four pieces of property in question in full settlement of the two notes representing his subscription. He went before the board and repeated the offer. He was asked whether the conveyance would be without "strings" or condition and replied that it would. In response to appellee's interrogations as to the value of the property he stated that it was worth approximately $13,000, with mortgages on several pieces totaling $3,750, and that appellee could mortgage it for enough to make available the first $5,000 and could later sell it for sufficient to secure the other $5,000.

On the day of the transaction the business manager and three members of the Board of appellee inspected the properties from the outside, in the presence of Carlson. The offer was then accepted and later in the day the deed was executed. Appellee has since been in the possession and control of the property and has collected the rents therefrom. The only actual knowledge appellee and its officers had as to Carlson's financial difficulties was what was gained from him through its correspondence and its attempt to collect the pledge. They knew from what he said that he was hard pressed for ready cash.

Temporary failure of a debtor to discharge his obligations promptly when they fall due is not in itself sufficient to prove that a creditor who is aware of such

default has reasonable cause to believe that it was intended to give a preference by means of a transfer which he obtains. First Nat. Bank v. Abbott, 8 Cir., 165 F. 852, 853. "Reasonable cause to suspect" does not have the same meaning as "reasonable cause to believe," and reasonable cause to believe that a transaction would constitute a preference is not proven by circumstances that would merely excite suspicion. Grant v. Monmouth First Nat. Bank, 97 U.S. 80, 81, 24 L.Ed. 971.

The evidence submitted to the trial court was in sharp conflict. The court found that the bankrupt was insolvent at the time of the transfer, but that the transferee and its officers acted in good faith and without knowledge of or participation in any fraudulent transaction and that neither the transferee nor any of its officers had knowledge or reasonable cause to believe that the bankrupt was insolvent or that the enforcement of the conveyance would effect a preference. The issue as to whether appellee and its officers had reason to believe that the conveyance to it of this property would effect a preference presented an issue of fact to the court.

■ Viewing the transaction in the light of its surrounding circumstances, it is to be noted that the representatives of the transferee were church men and educators, not schooled in the intricacies of business. They were dealing with one of their own faith, one with whom they had close contact, and who was highly regarded by them. He was known to them as a big contractor, a man who had been liberal in his donations and his charitable activities. They were cognizant of the fact that he had a large amount of contracting equipment and a great number of contracts involving large sums of money. The finding of the trial court that appellee did not have reason to believe that a preference would result from this conveyance is sustained by substantial testimony and cannot be disturbed on appeal.

■ Section 67, sub. e, of the Bankruptcy Act, 11 U.S.C.A. § 107, sub. e, provides that a conveyance or transfer made by a bankrupt within four months of the adjudication, with the intent and purpose on his part to hinder, delay or defraud his creditors, is null and void as against the creditors, except as to purchasers in good faith and for a present fair consideration. Although the bankrupt may act in bad faith and with a fraudulent purpose in mind, yet if the transferee is free of fraud and acts in good faith and gives a present fair consideration in exchange for the transfer of property, the transaction cannot be set aside. Payment of an antecedent debt is a fair consideration. Strongin v. International Acceptance Bank, 2 Cir., 70 F.2d 248; Coder v. Arts, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772, 16 Ann.Cas. 1008; Dean v. Davis, 242 U.S. 438, 37 S.Ct. 130, 61 L.Ed. 419.

An examination of the testimony supports the finding of the court that the transferee of the property, the appellee herein, acted in good faith and in no way participated in any fraudulent scheme to defraud the creditors of the bankrupt.

The judgment of the trial court is affirmed.