### In re KEY TRUCK LEASING, INC., Debtor.

**Robert A. FOTHERGILL, Trustee for Key Truck Leasing, Inc., Plaintiff,**

v.

**ALL FREIGHT & ASSOCIATES and Bernard W. Clark, d/b/a World Growers Alliance, Defendants.**

**Bankruptcy No. 78–20933–J.**

United States Bankruptcy Court, D. Kansas.

Jan. 12, 1982.

James Yates, Kansas City, Kan., for plaintiff, Robert A. Fothergill, trustee for Key Truck Leasing, Inc.

Donald J. Quinn, Kansas City, Mo. and local counsel, William Tuley, Prairie Village, Kan., for defendants, All Freight & Associates, Inc. and Bernard W. Clark, d/b/a World Growers Alliance.

## MEMORANDUM OPINION

BENJAMIN E. FRANKLIN, Bankruptcy Judge.

This matter came on for trial on August 3 & 4, 1981, upon plaintiff's Complaint under sections 67(d) and 60(b) of the Bankruptcy Act. Plaintiff also included a claim against defendant, All Freight & Associates, Inc., for an open account in the amount of $364.62, for services rendered. At trial, plaintiff withdrew his § 67d cause of action, and proceeded under the other two causes of action. Plaintiff, Robert A. Fothergill, trustee for Key Truck Leasing, Inc. was represented by James Yates. Defendants, All Freight & Associates, Inc., and Bernard W. Clark, d/b/a World Growers Alliance, were represented by Donald J. Quinn, and local counsel, William Tuley.

## FINDINGS OF FACT

Most material facts are in dispute. After reviewing the pleadings, briefs, and file herein; and after evaluating a host of conflicting testimony, this Court finds as follows:

1. That this Court has jurisdiction pursuant to 11 U.S.C. § 46; and that venue is proper pursuant to Bankruptcy Rule 116.

2. That plaintiff is the trustee for debtor, Key Truck Leasing, Inc. (Key Truck), a Delaware corporation engaged in the business of leasing trucks.

3. That defendants, All Freight & Associates, Inc., (hereinafter referred to as AFA) and Bernard W. Clark, d/b/a World Growers Alliance (hereinafter referred to as WGA) are interrelated. Clark is president and a major shareholder of AFA and a partner in WGA.

4. That a Key Truck invoice dated January 8, 1979, showed that $364.62 was due from All Freight Systems, 1026 S. 10th St., Kansas City, Kansas (*Pl.Ex. # 8*). Defendant, AFA, has the same address.

5. That in early October of 1978, AFA orally agreed to provide Key Truck with needed capital infusion. This agreement was formally documented in writing on October 27, 1978. (*Pl.Ex. # 1*). AFA invested $121,000.00 in Key Truck. In consideration of AFA's investment, Key Truck agreed to: (1) give AFA 75% of Key Truck's stock; (2) give AFA 5 out of 7 board of director positions; and (3) a loan by Lloyd Schumacher (president of Key Truck) to Key Truck in the amount of $50,000.00.

6. That certain creditors of Key Truck refused to release tractors and trailers until they were paid for repairs on the vehicles. AFA realized that Key Truck could not operate profitably as long as it could not rent its trucks. AFA agreed to loan Key Truck the money to pay the repair bills. On October 19, 1978, WGA loaned Key Truck $5,000.00; and on October 20, 1978, AFA advanced $5,000.00 to Key Truck's creditor. Thus, Key Truck received loans totalling $10,000.00. These loans were unsecured.

7. That the parties stipulated that Key Truck repaid the two loans on December 11, 1978, just three days before Key Truck filed its Chapter XI petition. Actually, AFA personnel wrote two checks on one of Key Truck's bank accounts; and paid AFA and WGA $5,000.00 each. AFA had Key Truck's authorization to write checks on the account.

8. That Key Truck's bankruptcy schedules showed liabilities of $1,985,731.62 and assets of $1,459,312.45.

9. That there are insufficient assets (existing or expected) in the estate to pay administrative expenses and priority claims. Unsecured creditors will receive nothing.

10. That from early October of 1978 to December 11, 1978, (when AFA abandoned the Key Truck operation), AFA personnel managed the day-to-day operations of Key Truck jointly with Lloyd Schumacher (president of Key Truck) and James Steider (vice president of Key Truck). The extent of AFA's control of Key Truck operations was greatly disputed. The Court heard a lot of conflicting testimony; but the Court finds that AFA personnel: (a) helped with the repossession and reconditioning of trucks; (b) scheduled payments of bills as they became due; (c) controlled and were authorized to write checks on two Key Truck bank accounts; and (d) had the opportunity for access to all books and records of Key Truck. The degree of AFA's awareness of the severity of Key Truck's financial condition was also greatly disputed.

The Court further finds that AFA personnel were fully aware of Key Truck's financial status before the December 11, 1978 payments for the following reasons:

(a) Raymond Miller, vice president of AFA, admitted that when the Key Truck operation was abandoned on December 11, 1978, it was his opinion that Key Truck's liabilities exceeded its assets;

(b) Creditors that Key Truck had neglected to tell AFA about, called daily demanding payment;

(c) Anticipated used truck allowances in excess of $100,000.00 never materialized;

(d) Lloyd Schumacher reneged on his promise to loan Key Truck $50,000.00. When AFA demanded the $50,000.00,

he offered $15,000.00, and then, only on a secured basis;

(e) Suppliers refused to give Key Truck credit; and

(f) On December 8, 1978, Key Truck's attorney, R. Pete Smith, informed AFA that Key Truck was contemplating bankruptcy.

11. That on December 14, 1978, Key Truck filed its Chapter XI petition; on November 8, 1979, Key Truck was adjudicated a bankrupt; and on February 2, 1981, plaintiff filed the complaint in this case.

### ISSUES

I. WHETHER PLAINTIFF'S CLAIM FOR $364.62 ON AN OPEN ACCOUNT IS BARRED BECAUSE IT IS BROUGHT AGAINST THE WRONG PARTY AND BECAUSE THE STATUTE OF LIMITATIONS HAS RUN.

II. WHETHER PLAINTIFF'S § 60(b) CAUSE OF ACTION IS BARRED BY THE STATUTE OF LIMITATIONS.

III. WHETHER THE TWO $5,000.00 PAYMENTS WERE PREFERENCES WITHIN THE MEANING OF § 60(a)(1).

IV. WHETHER THE TWO $5,000.00 PAYMENTS WERE VOIDABLE PREFERENCES PURSUANT TO § 60(b).

### CONCLUSIONS OF LAW

#### I.

AFA argues that plaintiff's claim for $364.62 on an open account is barred for two reasons: first, AFA is not the debtor, All Freight Systems, Inc. is; and second, even if AFA owes the $364.62, plaintiff's claim is barred by the statute of limitations.

■ With respect to AFA's first argument, the Court finds that AFA is the real party in interest. Although Key Truck's invoice statement recites "charge to All Freight Systems", the back-up work sheet indicates that the account is for lettering on new trucks for AFA. Also, the address listed on the invoice sheet is that of AFA's.

■ The applicable statute of limitations for an action by the trustee upon a claim of the debtor, is section 11(e) of the Bankruptcy Act (11 U.S.C. § 29). That section states in pertinent part as follows:

"§ 11. Suits By and Against Bankrupts.

*e. A receiver or trustee may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings in behalf of the estate upon any claim against which the period of limitation fixed by Federal or State law had not expired at the time of the filing of the petition in bankruptcy . . . ."*

Thus, the trustee can bring the action if: (1) it would not have been barred by a state statute of limitations on the date of the petition; and (2) it is brought within two years of the date of adjudication.

In Kansas, an action upon any agreement, contract, or promise in writing must be brought within five years. K.S.A. 60–511(1). Here we do not know when the agreement occurred, but the invoice is dated January 8, 1979. The invoice is dated after the time Key Truck filed its petition; thus, the Court finds that the agreement occurred around the same time, and under Kansas law, then, the action was not barred at the time the petition was filed. Furthermore, the trustee filed his original complaint on February 2, 1981, and amended it to include this cause of action, on April 29, 1981; therefore, the Court finds that the trustee brought this action within two years after the November 8, 1979, date of adjudication.

ACCORDINGLY, judgment is granted in favor of the plaintiff and against defendant, AFA, in the amount of $364.62, for an open account debt for services rendered.

#### II.

■ AFA argues that plaintiff's § 60(b) cause of action is barred by the statute of limitations, as well. Section 11(e) applies to

actions to avoid preferences. *Herget v. Central Bank & Trust Company*, 324 U.S. 4, 65 S.Ct. 505, 89 L.Ed. 656 (1945). Therefore, the § 60(b) action is not barred if (1) it would not have been barred by a state statute of limitations on the date of the petition; and (2) is brought within two years of the date of adjudication.

 The applicable statute of limitations for an action upon a liability created by statute, other than a penalty or forfeiture, is three years in Kansas. (K.S.A. 60–512(2)). Plaintiff's action is based on a liability created by statute. The Bankruptcy Act makes a creditor who received a voidable preference liable for the property or value of the property (§ 60(b)). Here, the alleged preferential transfers occurred on December 11, 1978. Key Truck filed its Chapter XI petition three days later. Thus, the action would not have been barred by the Kansas statute of limitations at the time the petition was filed.

The Court finds that Key Truck was adjudicated a bankrupt on November 8, 1979; and that the trustee filed the instant complaint on February 2, 1981; thus, the complaint was filed within two years after adjudication. Therefore, plaintiff's § 60(b) action is not barred by the statutory limitations.

### III.

 The third issue is whether or not the two $5,000.00 payments were preferences within the meaning of § 60(a)(1) of the Bankruptcy Act (11 U.S.C. § 96). That section states:

"§ 60. Preferred Creditors.

*a (1) A preference is a transfer, as defined in this Act, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this Act, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class."*

Simply stated, there are five elements of a preference:

1. a transfer;
2. to a creditor for an antecedent debt;
3. made while insolvent;
4. within four months of the petition; and
5. which gives the creditor a greater percentage than other creditors in his class.

The trustee has the burden of proving each and every element. *Vance v. Dugan*, 187 F.2d 605, 606 (10th Cir. 1957).

The first element is a transfer of the debtor's property. AFA wrote two $5,000.00 checks to repay itself and WGA. AFA argues that on these facts, no transfer occurred. AFA defines a transfer as a disposition by the debtor or one in control of the debtor.

"Transfer" is not defined in § 60(a); but it is defined in § 1(30) of the Bankruptcy Act (11 U.S.C. § 1). It includes direct, indirect, voluntary and involuntary dispositions of the debtor's property. Furthermore,

*"It is not necessary that the debtor have made a voluntary transfer. Equality of distribution among creditors is as much defeated by what a creditor takes or seizes as by what the debtor gives willingly. Congress has so recognized this in defining a preference as a transfer 'made or suffered' by the debtor. . ."* 2 Cowans on Bankruptcy Law and Practice 2d § 467 (1978) p. 17.

The Court, therefore, finds that for § 60(a)(1) purposes, a transfer occurred.

The second element is: to a creditor for an antecedent debt. Clearly, this element is satisfied. AFA and WGA were creditors of Key Truck by virtue of the $10,000.00 in loans to Key Truck. These loans were made in October of 1978; and Key Truck repaid the loans in December of 1978.

The third element is that the transfer was made while the debtor was insolvent. Insolvent is defined in § 1(19) of the Bankruptcy Act as "*whenever the aggregate of his property, exclusive of any property*

*which he may have conveyed, transferred, concealed, removed, or permitted to be concealed or removed, with intent to defraud, hinder, or delay his creditors, shall not at a fair valuation be sufficient in amount to pay his debts;".*

On December 14, 1978, when Key Truck filed its Chapter XI petition, the aggregate value of its property was $1,459,312.45, and thus, insufficient to pay its debts of $1,985,-731.62. This Court therefore, finds that three days earlier, when the two transfers occurred, Key Truck was similarly insolvent. Furthermore, this Court heard testimony that Key Truck had been experiencing severe financial problems for some time.

The fourth element is that the transfer occurred within four months before the petition. Here, the transfers occurred just three days before the petition.

The fifth and final element of a preference is that the effect is to give the creditor proportionally more than other creditors of the same class. Here, AFA and WGA, unsecured creditors, received 100% of their loans. The Court finds that the other unsecured creditors will receive nothing.

This Court concludes, therefore, that the two transfers satisfy each of the five elements of a preference; and are preferential transfers within the meaning of § 60(a)(1) of the Bankruptcy Act of 1898.

■ The fourth issue is whether the two preferential transfers are voidable pursuant to § 60(b) of the Bankruptcy Act (11 U.S.C. § 96). That section states in pertinent part:

"§ 60. Preferred Creditors.

*b. Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property, except a bona-fide purchaser from or lienor of the debtor's*

*transferee for a present fair equivalent value ..."*

AFA argues that plaintiff has failed to show that it had reasonable cause to believe that Key Truck was insolvent, at the time of the transfer. This scienter requirement in § 60(b) has been the subject of much court interpretation. In *McDougal v. Central Union Conference Ass'n, etc.,* 110 F.2d 939, 941 (10th Cir. 1940), the court said that each case must be viewed and interpreted in the light of its own facts, circumstances and surroundings.

In *McDougal,* the Court found that the defendant did not have reasonable cause to believe. There the defendant/creditor accepted realty in lieu of a $10,000.00 cash contribution to the church library fund. Although the defendant knew that the debtor was unable to pay cash as promised, the defendant also knew that the debtor was a large-scale contractor who had a history of making large charitable contributions to the church. On the surface, it appeared that the debtor was quite solvent. The court paid particular attention to the fact that the defendant was a church council composed of men unschooled in the intricacies of the business world.

In *Holahan v. Gore,* 278 F.Supp. 899 (D.C. E.D. La.1968), the court outlined factors in determining whether the creditor reasonably believed that the debtor was insolvent:

1. The relationship of the parties;
2. The parties' intimacy;
3. The usual or unusual nature of the transfer;
4. The opportunities of the creditor to obtain knowledge of the debtor's condition;
5. The creditor's participation in the debtor's business; and
6. The fairness of witnesses as to disclosure of relevant facts within their knowledge.

Here, the facts are distinguishable from those in *McDougal.* Here, the facts readily fit into the *Holahan* factors indicating that the creditor had the requisite scienter. The Court finds that AFA was not an unsophis-

ticated, unknowledgeable creditor; that AFA controlled Key Truck, to some extent; and that AFA had the opportunity to examine Key Truck's books and records, which were always on the premises.[1]

The Court further finds that AFA was in a position to ascertain detailed knowledge of Key Truck's condition; AFA's witnesses testified that during the period AFA personnel were stationed on Key Truck's premises, a number of things were learned: They discovered that Key Truck had more creditors than it had represented to AFA, and those creditors called daily demanding payment; two anticipated assets never materialized, that is, the $50,000.00 loan from Lloyd Schumacher and the over $100,000.00 in used truck allowances; creditors had refused to deal with Key Truck other than on a cash basis; Key Truck's attorney informed AFA that Key Truck was contemplating bankruptcy. The Court further finds that all of these facts were known to AFA before the December 11, 1978, transfers and that AFA was on sufficient notice to reasonably believe Key Truck was insolvent.

In *Eureka-Carlisle Company v. Rottman*, 398 F.2d 1015, 1018–19 (10th Cir. 1968), the court held for the trustee as follows, distinguishing its facts from the situation in the *McDougal* case:

"... the present case is the antithesis of the McDougal situation. Unlike the officers of the church in that case, Eureka was a very sophisticated company with 70 years' experience in dealing with trading stamp companies which bought stamps manufactured by it.... It knew Pioneer was concealing its financial condition but, instead of making adequate inquiry, it used the power of economic life and death which it had over Pioneer to obtain preferential payments on its long-delinquent account.

... Eureka argues that, if it had made a reasonably diligent inquiry, it could have obtained no information because knowl-

edge of Pioneer's insolvency could only be disclosed by Pioneer's books, to which it had no access. But Eureka could and should have sent an experienced credit man to explore other avenues of information about Pioneer's financial status; ... A creditor may not wilfully close his eyes in order to remain ignorant of his debtor's condition...."

Here, AFA was in a better position than Eureka to have and to obtain knowledge of its debtor's financial condition. This Court concludes that AFA did have reasonable cause to believe that Key Truck was insolvent.

ACCORDINGLY, this Court holds that the preferential transfers of $5,000.00 each to AFA and WGA are voidable pursuant to section 60(b). The trustee is therefore, entitled to recover $5,000.00 from AFA, and $5,000.00 from WGA, costs to be assessed against the defendants.

THE FOREGOING CONSTITUTES MY FINDINGS OF FACT AND CONCLUSIONS OF LAW UNDER BANKRUPTCY RULE 752 AND RULE 52(a) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

---

1. AFA offered testimony that it was not in control of Key Truck, and that it did not have access to the books and records. This Court had the opportunity to observe the demeanor of the witnesses and has given more credence and weight to the testimony of plaintiff's witnesses. See *Volis v. Puritan Life Ins. Co.*, 548 F.2d 895, 901 (10th Cir. 1977).