**In re MAYTAG SALES AND SERVICE, INC., Debtor.**

**Richard D. ELLENBERG as Trustee, Plaintiff,**

**v.**

**DEKALB COUNTY, GEORGIA, Defendant.**

Bankruptcy No. 81–02615A.
Adv. No. 82–0265A.

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Sept. 24, 1982.

Kathy L. Kushner, Atlanta, Ga., for plaintiff Richard D. Ellenberg.

Dillard & Wolfe, P. C., George P. Dillard and Richard W. Calhoun, Decatur, Ga., for defendant DeKalb County.

## ORDER

HUGH ROBINSON, Bankruptcy Judge.

### FINDINGS OF FACT

Defendant, DeKalb County, was awarded a judgment against the debtor, Maytag Sales and Service, Inc. on December 9, 1976, in DeKalb Superior Court. On February 19, 1980, a writ of fieri facias was entered in the DeKalb County records based on this judgment. Thereafter, on April 16, 1981, slightly more than four years after the judgment was rendered, defendant filed a garnishment action and a summons of garnishment was served on the debtor's bank the following day. The bank debited the debtor's account on the same day. Three days later, on April 20, 1981 the bank paid the amount debited, $5,168.81, to the defendant. Subsequently, the debtor filed a bankruptcy petition June 26, 1981.

In the case at bar, the trustee as plaintiff seeks an award of $5,165.81, based on his assertion that the amount is a transfer of funds from the debtor's bank account and as such it is avoidable as a preferential transfer pursuant to 11 U.S.C. 547(b). The defendant, on the other hand, contends that the amount it received is not a preference because it received no more than it would have under a Chapter 7 liquidation. The defendant argues its claim has priority over the claims of general creditors because the judgment on which the claim is based was rendered in 1976 and thus it is senior to all claims filed.

DeKalb County also asserts certain defenses in support of its position that the amount garnisheed is not an avoidable preference on the following grounds: that it may not be sued by virtue of the doctrine of Sovereign Immunity; that the twelve-month period for filing a suit against the county has expired; and finally, in a section of its brief entitled "set-off", it argues that the larger amount of its total claim should be off-set against the smaller amount it has received. Since this "set-off" process would result in a remaining indebtedness to the county, DeKalb County argues that it cannot be required to return to the estate the amount it received.

## ISSUE

Whether a judgment against a debtor rendered on December 9, 1976, upon which a summons of garnishment was not issued until April 17, 1981, which date is within ninety days of the date the bankruptcy petition was filed, constitutes a preferential transfer avoidable by the trustee pursuant to section 547(b).

## APPLICABLE LAW

### A. *Preferential Transfer*

The elements of a preferential transfer consist of: (1) a transfer of the debtor's property; (2) for or on account of an antecedent debt owed by the debtor before such transfer was made; (3) made while the debtor was insolvent; (4) made on or within 90 days before the date of the filing of the petition, or between 90 days and one year before the filing of the petition if the creditor was an insider and had reasonable cause to believe the debtor insolvent at the time of the transfer; and (5) the transfer enables the creditor to receive more than he would have received if the case were a liquidation case, the transfer had not been made and the claims were allowed or disallowed to the extent permitted by Title 11. 11 U.S.C. § 547(b); 4 Collier on Bankruptcy ¶ 547.-01 (15th ed. 1982) (hereinafter "Colliers").

A trustee may avoid a disposition of the debtor's property if the transfer meets the six requirements set out in the statute. Collier on Bankruptcy, ¶ 547.08[1] (15th ed. 1982). In the case at bar, there is no dispute regarding elements one through three. The transfer was for the benefit of DeKalb County and the county is a creditor within the meaning of that term. Section 101(9)(A) defines a "creditor" as an entity that has a claim against the debtor that arose at the time of or before the order for relief. 11 U.S.C. § 101(9)(A). The term "entity" defined in Section 101(14) includes person, estate, trust and governmental unit.

■ The transfer in the instant case was made on account of a debt which arose by virtue of an unsatisfied antecedent judg-

ment. Further, there is a presumption of insolvency under section 547(f) whereby "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date ... of the petition." This presumption may be rebutted if the creditor shows that the debtors' assets were greater than its liabilities. Collier's ¶ 547.-26. The creditor in this case, however, did not attempt to rebut the presumption. Thus the trustee was not required to present evidence on the issue of insolvency. *In re: Butler,* 3 B.R. 182, 1 C.B.C. 533 (Bkrtcy., E.D.Tenn.1980).

The crux of this dispute is DeKalb's contention that its lien has priority since it dates from the date the judgment was rendered or, at the latest, the date it was entered on the general execution docket. Since resolution of this issue depends on state law, Georgia law must be examined with respect to perfection of a lien created by a judgment. Collier's ¶ 547.46[1].

### B. *A bank deposit is a chose in action*

■ To determine when the lien arose in this case, one must first define the type of property in question. A bank account is not personalty in the debtor's possession. As defined by Georgia statute, "[p]ersonalty to which the owner has a right of possession future or a right of immediate possession, wrongfully withheld is termed by the law a chose in action." Ga.Code Ann. § 85–1801.

According to Georgia case law, a bank deposit is within the definition of a chose in action. *Ricks v. Broyles,* 78 Ga. 610, 3 S.E. 772 (1887). In that case, the Supreme Court of Georgia reversed a decision which held a receiver not liable for the loss of a fund entrusted to him. The receiver's duty was to dispose of certain property and hold the proceeds subject to court order. Upon order by the court to report the amount he had on hand and to show cause why it should not be paid to the plaintiff, the receiver answered that part of the fund was lost because it had been deposited in his own bank in a separate account and the bank had failed. Although the receiver had proceeded in good faith, the Georgia Su-

preme Court held that he was personally liable for the amount deposited because he had done so without court direction. *Id.* at 614, 3 S.E. 772. The court stated that "[t]he fund was transformed into a chose in action. A receiver, whose duty is one of mere custody, and not the transaction of business cannot at his own will lay the foundation of an action or render an action necessary. He cannot even sue or defend without leave." *Id.* at 614–615, 3 S.E. 772.

In a more recent decision, *Water Processing Company v. Southern Golf Builders, Inc.,* 248 Ga. 597, 598, 285 S.E.2d 21 (1981), the Georgia Supreme Court stated that a check constitutes a chose in action. That decision held that a check from the trustee which was payable to a client but which was held by his attorney was within the purview of the applicable garnishment statute. The check was subject to garnishment since it met the requirements of the statute: "It was property of the defendant and it was in the possession of the garnishee 'at any time from the date of the service of summons . . . to the date of the garnishee's answer.'" *Id.* And *see:* Ga.Code Ann. 46–301(b). Pertinent to the present discussion, the court in that case notes that "[t]he proper way to get at a chose in action is by garnishment." *Id.* (citing cases) (Cf. *In re Candler,* 7 B.C.D. 724, C.C.H., 66,001 (N.D. Ga.1976). In that case the court discusses the priority of various judgment lienholders to proceeds from the sale of the bankrupt's residence.)

Similarly, the Court in *General Lithographing Co. v. Sight & Sound Projectors, Inc.,* 128 Ga.App. 304, 196 S.E.2d 479, 481 (1973), stated that "[a] judgment does not create a lien on a chose in action. The lien on a chose in action is created by the service of summons of garnishment, and the lien dates from the date of the service of summons and not from the date of the judgment."

In *Fidelity Co. v. Exchange Bank,* 100 Ga. 619, 28 S.E. 393 (1897), a receiver was awarded a fee by the Court upon discharge of his duties. The receiver directed the Commissioners who were to disburse the fund out of which the receiver was to be paid to pay instead the Exchange Bank that part of the fund which had been awarded to him. Fidelity Bank had, two months earlier, obtained a judgment against the receiver. Fidelity did not, however, sue out a summons of garnishment before the time the assignment was made to Exchange Bank. In upholding the decision in favor of Exchange Bank, the court stated:

> [c]hoses in action are not subject to seizure and sale under executions based upon ordinary judgments. In order to reach the property of the debtor in such choses in action, some other additional proceeding is necessary to fix the lien of such judgments. The fund must be reached either by process of garnishment, or by some collateral proceeding instituted for the purpose of impounding it so that it can be applied in satisfaction of the judgment. *Id.* at 625, 28 S.E. 393.

It is apparent from these cases that a chose in action is treated differently under Georgia law than realty or personalty held by the debtor. The Georgia rule is that "[n]o lien is created on a chose in action by a judgment." *McWilliams v. Hemingway,* 80 Ga.App. 843, 845, 57 S.E.2d 623 (1950).

The plaintiff in *McWilliams v. Hemingway* retained title to an automobile which was in the possession of the defendant. Plaintiff was awarded a default judgment in a bail trover action. After the automobile was levied upon and sold, the plaintiff sued out a garnishment for the remaining amount it was owed. The summons was served on the defendant's employer. The amount garnisheed was earned within the four month period prior to filing of the petition in bankruptcy. The court sustained the lower court's ruling for the trustee in bankruptcy and ordered that the sum obtained from the defendant by garnishment was to be turned over to the trustee. The court stated:

> As to property of the defendant other than personalty sued for . . . the judgment is controlled by the rules of law relating to judgments generally. Execu-

tion may issue under it and levy be made on all the defendant's property of *which he is in possession.* However, property or money to which the debtor has only the right of possession rather than actual possession is a chose in action. No lien is created upon a chose in action by a judgment. The plaintiff's lien arises rather by summons in garnishment, and when money due the defendant as salary is in the hands of the employer, the lien attaches from the date of the summons. When this date is within the four-month period prior to the filing of the petition for bankruptcy ... the lien is thereby rendered void by the Federal Statute." *Id.* at 845, 57 S.E.2d 623. (Emphasis supplied).

The decision in *Armour Parking Co. v. Wynn,* 119 Ga. 683, 46 S.E. 865 (1903), is in accord with the above holdings. There the plaintiff obtained a judgment in 1897 and served a summons of garnishment on defendant's employer five years later. The court held for the employer garnishee who had answered that its employee had been adjudicated bankrupt and the employee was thereby discharged from all debts. Although the facts do not clearly set out the exact date on which the bankruptcy petition was filed and the date the garnishment summons was issued, the court states that the petition for certiorari clearly indicated that the voluntary petition was filed after the summons of garnishment. Since the garnishment occurred within the four month period prior to the petition it was held that "[t]he judgment creditor has no right in or to the fund, and no lien on the money or the chose in action." *Id.* at 684–685, 46 S.E. 865.

## C. *Involuntary Transfer*

■ With respect to whether garnisheeing the debtor's bank account is considered a transfer, it is clear that an involuntary disposition of the debtor's property is nonetheless a "transfer" for purposes of determining a preference. Collier's ¶ 547.-11. "Transfer" is defined as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property including a retention of title as security interest." 11 U.S.C. § 101(40). The inclusive language of the present statute clears up the problem which existed under the former law. That is, under the old law some courts required that a debtor perform some positive act before holding that a preferential transfer had taken place. Now, however, an involuntary disposition such as "[t]he fixing of judicial liens within the preference period will be avoidable if all other elements of a preference are present." Collier's ¶ 547.11.

■ To summarize the above discussion, it is clear that the judgment rendered in DeKalb Superior Court on December 9, 1976, did not result in a lien attaching to the debtor's bank account since under Georgia law a bank account is a chose in action and a lien attaches to a chose in action upon the date the summons is served. Thus the lien by DeKalb County on the debtor's bank deposit was a judgment lien on a chose in action and as such it was not fixed until the summons of garnishment was issued upon the bank on about April 17, 1982. Subsequently the bank debited the debtor's account and made an involuntary transfer of the debtor's money to the State Court of DeKalb County on April 20, 1981. Thereafter, the fund was paid over to the defendant. Thus, the transfer occurred within ninety days before the bankruptcy petition was filed and the transaction satisfies the fourth element of section 547(a) governing voidable preferences.

## D. *The Creditor Must Have Received More Than It Would In A Liquidation*

■ The final statutory component which must be met before a trustee can avoid an alleged preferential transfer requires that the creditor must have received more by virtue of the transfer than it would have received had the case been a liquidation proceeding. Accordingly, the court must classify the creditor's claim to see if it received more than it would have had the transfer not occurred and payment

pursuant to liquidation proceedings had been made. Collier's § 547.35.

In order to classify DeKalb County's claim, it must be determined whether a judgment entered as a fi. fa. in the general execution docket of the county on February 2, 1980, is a secured or an unsecured claim under the law of Georgia prior to the summons of garnishment being served. The court in *In re Burnham*, 12 B.R. 286 (Bkrtcy.N.D.Ga.1981), found that the judgment creditors in that case had received more by garnishment than they would have without it since "[w]ithout their garnishment liens [the creditors] would be unsecured creditors..." *Id.* at 298. Regarding the judgment received by the creditors in *In re Burnham*, the court states in its findings of fact that "[e]xecution was recorded in Clayton County on February 8, 1979" *Id.* at 289. Therefore, recording a fi. fa. in the general execution docket was not sufficient to create a secured lien.

Similarly, in its Statement of Material Facts Not in Issue the defendant states that a fi. fa. was entered February 19, 1980, on the general execution docket of DeKalb County. However, the garnishment summons which created a lien on the chose in action was not served until April 16, 1981. That date was seventy-one (71) days before the petition was filed and thus within the ninety day period during which the trustee may avoid a transfer.

The Court in *Fidelity Co. v. Exchange Bank, supra,* held that the assignment of a chose in action made by the receiver was valid against a judgment creditor who had not before the assignment succeeded in fixing his lien.

Until it has been so seized by the Courts [by garnishment or some collateral proceeding] for the purpose of appropriating it to the payment of the judgment, [the chose in action] is still subject to the dominion and control of the debtor, and he may make a bona fide assignment or transfer of the fund in satisfaction of pre-existing debts, and the person receiving it ... will take free from the general lien established by law in favor of a judgment creditor against the property of the assignor. 100 Ga. at 625, 28 S.E. 393.

### DeKALB COUNTY'S DEFENSES

#### A. *Sovereign Immunity*

█ DeKalb County contends that it can not be compelled to pay over to the trustee the amount it received by garnisheeing the debtor's bank account because it is immune from suit. This claim must fail for two reasons.

First, DeKalb County's proof of claim against the debtor [filed July 31, 1981] waives its sovereign immunity with respect to any claim against it which arose out of the same transaction or occurrence. 11 U.S.C. § 106(a). Since the trustee's claim that DeKalb County received a preference is a compulsory counterclaim—that is, it arises out of the same transaction or occurrence as DeKalb's claim against the debtor—the county's sovereign immunity is waived.

Secondly, even if DeKalb had not filed a claim thereby waiving its immunity, nonetheless Section 106(c) provides:

Except as provided in subsections (a) and (b) of this section [regarding waiver as to compulsory counterclaims by filing a claim against the estate and the offsetting of claims] and notwithstanding any assertion of sovereign immunity—
(1) a provision of this title that contains "creditor", "entity" or "governmental unit" applies to governmental units; and
(2) a determination by the Court of an issue arising under such a provision binds governmental units.

Hence, not only does a governmental unit lose the protection of the doctrine of sovereign immunity by asserting a claim against the estate but "[e]ven if the rights of a governmental unit are not asserted, section 106(c) authorizes the trustee to recover avoidable transfers from governmental units." 1 Collier Bankruptcy Manual ¶ 106.-04 (3d ed. 1982). The court notes that Bankruptcy Courts in New York, *In re Community Hosp. of Rockland County*, 5 B.R. 7, 1 C.B.C.2d 216 (Bkrtcy.S.D.N.Y.

1979), aff'd., 5 B.R. 11, 1 C.B.C.2d 291 (D.C. S.D.N.Y.1980), and Illinois, *In re Ramos,* 12 B.R. 250, 4 C.B.C.2d 1016 (Bkrtcy.N.D.Ill. 1981), which have relied only upon subsection (a) and (b) have upheld the defense of sovereign immunity in proceedings seeking a turnover of funds from the United States and the State of Illinois respectively. However, the legislative history indicates that section 106(c) of the House Amendment overrules contrary language in the House Report with the result that the government is subject to the avoidance of preferential transfers. 124 Cong.Rec. H 11,097 (Sept. 28, 1978); S 17,414 (Oct. 6, 1978). *Reprinted in* Bankruptcy Lawyers Edition, Legislative History § 81:3 (1979).

The Northern District of Michigan Bankruptcy Court held that, by virtue of subsection (c) of section 106, the defense of sovereign immunity is not available to a governmental unit in a case where the debtor or the estate is proceeding against it to avoid a transfer or recover property from a creditor, entity or governmental unit. *In re Remke, Inc.,* 5 B.R. 299, 2 C.B.C.2d 670, 672 (Bkrtcy.E.D.Mich.1980).

The Court found that the legislative history of subsection (c) clearly indicated Congress' intention that the government as a creditor is deemed to have waived its sovereign immunity with respect to a preference action instituted by the debtor pursuant to section 547. The pertinent part of the legislative history quoted by the court in *In re Remke, Inc.* states:

> Except as provided in section 106(a) and (b), subsection (c) is not limited to those issues, but permits the bankruptcy court to bind governmental units on other matters as well. For example, section 106(c) permits a trustee or debtor in possession to assert avoiding powers under title 11 against a governmental unit; contrary language in the House report to H.R. 8200 is thereby overruled. *Id.* 5 B.R. 299, 2 C.B.C.2d at 673, 124 Cong.Rec. H 11,901 (Sept. 28, 1978); S 17,407 (Oct. 6, 1978).

Consequently, DeKalb County's defense of sovereign immunity will not stand against an action by the trustee to recover an alleged preferential transfer.

### B. *Set-Off*

■ In the present factual scenario, the defense of set-off is without merit. By definition, a set-off requires mutual debts. *See generally:* 2 Collier's, ¶ 106.03.

The case of *In re Brendern Enterprises, Inc.,* 12 B.R. 458 (Bkrtcy.E.D.Pa.1981), held that no mutuality existed where a manufacturer as a bailee held defective equipment which had been returned to it by the debtor for repair, replacement, or credit. The title to the equipment was in the estate and could not form a basis for a debt which the creditor could use to set-off his claims against the debtor. "A set-off is only applicable to cases where the debtor and the creditor 'owe' one another." *Id.* at 460.

DeKalb County was not indebted to the debtor. Therefore, set-off is inapplicable in the facts of the present case just as it was in the case of *In re Brendern Enterprises, Inc., supra.*

### C. *Statute of Limitations*

■ DeKalb County argues that since its garnishment action was filed on April 15, 1981, and the Trustee's complaint was not served on any member of the Board of Commissioners until April 21, 1982, the claim is barred by the twelve months statute of limitations for filing claims against counties. Although defendant's brief cites Ga.Code Ann. § 23–1701, that section is inapplicable. The section of the Georgia Code which pertains to the instant facts provides that all claims against counties must be presented within 12 months *after they accrue or become payable,* or the same are barred. . . . Ga.Code Ann. § 23–1602 (1971). (Emphasis supplied). In addition, the relevant section of the Georgia Code governing proper service upon a county states: "The summons and complaint shall be served together . . . Service shall be made by delivering a copy of the summons attached to a copy of the complaint. . . If against a county . . . to the chairman of the board of commissioners." Ga.Code Ann. § 81A–104(d)(5) (1977).

Thus, claims against a county are required to be presented to the chairman of the board of commissioners within 12 months *after they accrue.* The claim at issue in this case accrued on the date the summons of garnishment was served on the debtor's bank. Until that date, there was no lien created. (See: Part I of this discussion.) Furthermore, until the date of the garnishment there was no preference for the trustee to attempt to avoid pursuant to section 547.

> Bankruptcy Code Section 108 provides:
> Extension of time
>> (a) If applicable law ... fixes a period within which a debtor may commence an action and such period has not expired before the date of the filing of the petition, the trustee may commence such action only before the later of—
>> (1) the end of such period...; and
>> (2) two years after the order for relief.

Two years after the order for relief in the present case would be June 26, 1983. This calculation is derived from a rule of construction in section 102(6) which defines the phrase "order for relief" as the entry of judgment. In a voluntary case, the filing of the petition under section 301 commences the case and the filing is considered to be the entry of the order for relief from which time periods are to be measured. Collier's ¶ 102.07. Thus, in the instant case if the petition for relief had been filed later than April 16, 1982, the trustee would be unable to require a return of the amount obtained by the county. *In re Discount Plywood Centers, Inc.,* 11 B.R. 866 (Bkrtcy.E.D.Pa. 1981). However, the petition here was filed two months and a few days after the garnishment summons was served. The debtor had at that time some nine months within which to bring a claim against DeKalb county. That is, the period fixed by state law for filing a claim against the county had not expired before the date the bankruptcy petition was filed. Thus, section 108(a) operates to give the trustee two years after the filing of the voluntary petition (which is the order for relief here) to bring the action since that date would be

the later of (1) the end of the state limitations period and (2) two years after the order for relief. Accordingly, the trustee had until June 26, 1982, to bring its complaint. Therefore, the trustee's amended complaint filed on April 16, 1982, was within the statutory time allotted. This is true even if, as the county claims, service was not made on "any member of the Board of Commissioners ... until April 21, 1982." [DeKalb County's Brief in Support of Motion for Summary Judgment p. 3]

This conclusion is consistent with section 546(a). "Periods of limitations for causes of action arising under the code are governed by sections 546(a), and 550(e)." Collier's ¶ 108.02.

> Section 546(a) provides:
> Limitations on avoiding powers
> (a) An action proceeding under section ..., 547 ... of this title may not be commenced after the earlier of
> (1) two years after the appointment of a trustee...
> (2) the time the case is closed or dismissed.

When this statute is applied to the instant facts, it is clear the trustee could not commence a cause of action after expiration of the earlier of: (1) two years from the date s/he was appointed or (2) the time the case is closed or dismissed. In the case of *In re: Key Truck Leasing, Inc.,* 16 B.R. 398 (Bkrtcy.D.Kan.1982), the alleged preferential transfer occurred on December 11, 1978 and Key Truck filed a Chapter XI petition three days later. At that time, the action would not have been barred by the applicable state statute of limitations. The court found that the trustee had filed the complaint to obtain the value of a voidable preference within two years after Key Truck had been adjudicated bankrupt. Therefore, the trustee's action was not barred by the statute of limitations. *Id.* at 402. Although that case involves section 11e of the old Bankruptcy Act, "[s]ubsections (a) and (b) [of section 108] have their origins in section 11e of the Bankruptcy Act and permit the trustee, when he steps into the shoes of the debtor, an extension of

time for filing an action or doing some other act that is required to preserve the debtor's rights." Collier's ¶ 108.01 quoting from H.R.Rep.No.595, 95th Cong., 1st Sess. 318 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 6275.

In summary, when applicable provisions of Georgia law are read in tandem with relevant Bankruptcy Code sections, it is apparent that the trustee's complaint to avoid a preference falls within the proper time period allowed from filing a claim against the county. Thus, the defense by DeKalb County that the trustee's suit is outside the statute of limitations must fail.

### CONCLUSIONS OF LAW

Under Georgia law, a bank account is a chose in action. As such, a lien on a bank account is not created by a judgment but by the service of a summons of garnishment. In the case at bar, DeKalb County's lien on the debtor's bank account arose on April 17, 1981, when the summons of garnishment was served. That date was within ninety days before the debtor filed its bankruptcy petition. Moreover, since an involuntary disposition of the debtor's property is within the inclusive definition of "transfer", the garnishment of the debtor's bank account in this case qualifies as a transfer for the purposes of section 547(b). Finally, DeKalb County held an unsecured claim until April 17, 1981, when the summons of garnishment was served and its judgment became a fixed lien. By garnisheeing the debtor's bank account on that date, it obtained more than it would have obtained in a liquidation proceeding. Additionally, it is clear from the above discussion that DeKalb County is not immune from suit, that the trustee's complaint to avoid a preference was not barred by the statute of limitations, and that the doctrine of set-off is inapplicable in this case. Therefore, the Trustee has made out all the elements of a preferential transfer and the transfer can be avoided pursuant to Section 547(b).

In accordance with the foregoing conclusions, it is hereby ORDERED that DeKalb County turn over to the trustee the amount of $5,168.81 which the county received by garnisheeing the Debtor's bank account.